JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Whitaker Thomas, Williams, Perry and Yowell, Michael.

## DEFENDANTS
TX Department of Criminal Justice, Brad Livingston, Executive Director; TX Department of Criminal Justice, William Stephens, Director, Correctional Institutions of Division - Please see attached.

**(b)** County of Residence of First Listed Plaintiff    Harris
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Harris
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Bobbie Stratton, Brad Chambers; Baker Donelson; 1301 McKinney, Suite 3700, Houston, Texas 77010; 713-650-9700.

Attorneys *(If Known)*
Edward Marshall, Texas Attorney General's Office; 209 West 14th Street, P.O. Box 12548, Austin, Texas 78711-2548; 512-463-2100 or 1-800-252-8011.

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1   U.S. Government Plaintiff | ☒ 3   Federal Question *(U.S. Government Not a Party)* |
| ☐ 2   U.S. Government Defendant | ☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | Corrupt Organizations |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 480 Consumer Credit |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | **LABOR** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | | ☐ 710 Fair Labor Standards | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | | Act | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | | ☐ 720 Labor/Management | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | | Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | | ☐ 751 Family and Medical | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - | Product Liability | | Leave Act | | Act |
| | Medical Malpractice | | | ☐ 790 Other Labor Litigation | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | or Defendant) | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | | 26 USC 7609 | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | | **IMMIGRATION** | | |
| | Employment | **Other:** | | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | ☐ 465 Other Immigration | | |
| | Other | ☒ 550 Civil Rights | | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☒ 1   Original Proceeding | ☐ 2   Removed from State Court | ☐ 3   Remanded from Appellate Court | ☐ 4   Reinstated or Reopened | ☐ 5   Transferred from Another District *(specify)* | ☐ 6   Multidistrict Litigation |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC §1983, 8th and 14th Amendments.
Brief description of cause:
1983 Complaint against TDCJ related to lethal injection drugs in Texas death penalty matters.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*    JUDGE _____ DOCKET NUMBER _____

DATE   10/1/13

SIGNATURE OF ATTORNEY OF RECORD

---

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

Defendant's continued:

Huntsville Unit, Huntsville, TX, James Jones,
Senior Warden

and

Unknown Executioners

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **THOMAS WHITAKER, PERRY WILLIAMS, and MICHAEL YOWELL** | § § § § | |
| **Plaintiffs,** | § § | **CIVIL ACTION NO.** |
| **vs.** | § § | _____ |
| **BRAD LIVINGSTON, Executive Director, Texas Department of Criminal Justice,** | § § § § § § | |
| **WILLIAM STEPHENS, Director, Correctional Institutions Division, Texas Department of Criminal Justice** | § § § § § § | |
| **JAMES JONES, Senior Warden, Huntsville Unit Huntsville, Texas,** | § § § § § | |
| **and** | § § | |
| **UNKNOWN EXECUTIONERS;** | § § | |
| **Defendants.** | | |

## PLAINTIFFS' ORIGINAL COMPLAINT

---

HO JAH01 758458 v5
9600000-000414  10/01/2013

The Plaintiffs, THOMAS WHITAKER, PERRY WILLIAMS, and MICHAEL YOWELL, move the Court for entry of judgment in their favor against the Texas Department of Criminal Justice and in support plead as follows:

## NATURE OF ACTION

1.     This action is brought pursuant to 42 U.S.C. § 1983 for violations and threatened violations of the right of Plaintiff(s) to be free from cruel and usual punishment under the Eighth and Fourteenth Amendments to the United States Constitution, and right of access to the courts and right to due process of law pursuant to the Fourteenth Amendment. Plaintiff(s) seek injunctive relief.

## PLAINTIFFS

2.     Plaintiff Thomas Whitaker is a person within the jurisdiction of the State of Texas. He is currently a death-sentenced inmate under the supervision of the Texas Department of Criminal Justice, TDCJ #999522. He is confined at the Polunsky Unit in Livingston, Texas. His federal habeas appeal is currently pending in the Southern District of Texas, Houston Division. No execution date is currently scheduled.

3.     Plaintiff Perry Williams is a person within the jurisdiction of the State of Texas. He is currently a death-sentenced inmate under the supervision of the Texas Department of Criminal Justice, TDCJ #999420 He is confined at the

---

**PLAINTIFFS' ORIGINAL COMPLAINT**                                      **Page 2 of 28**

Polunsky Unit in Livingston Texas. He is appealing the decision of a federal district court, Southern District of Texas, Houston Division., to the U.S. Court of Appeals for the Fifth Circuit. No execution date is currently scheduled.

4.     Plaintiff Michael Yowell is a person within the jurisdiction of the State of Texas. He is currently a death-sentenced inmate under the supervision of the Texas Department of Criminal Justice, TDCJ #999334. He is confined at the Polunsky Unit in Livingston Texas. His case arises from the Western District of Texas. Mr. Yowell is scheduled for execution on October 9, 2013.

## DEFENDANTS

5.     Defendant Brad Livingston is the Executive Director of the Texas Department of Criminal Justice. Service has been waived by counsel for Mr. Livingston.

6.     Defendant William Stephens is the Director of the Correctional Institutions Division of the Texas Department of Criminal Justice ("TDCJ"), and holds the power, by statute, to determine and supervise the manner by which death sentenced inmates are executed. Tex. Code Crim. Proc. art. 43.14. Service has been waived by counsel for Mr. Livingston.

HO JAH01 758458 v5
9600000-000414 10/01/2013

7.     Defendant James Jones is the Senior Warden of the Huntsville Unit, where executions take place.   Service has been waived by counsel for Mr. Livingston.

8.     Defendants Unknown Executioners are employed by the Texas Department of Criminal Justice and carry out executions in Texas.   Plaintiffs do not yet know their identities because the TDCJ conceals them.

9.     The Defendants are all state officials acting, in all respects relevant to this action, under color of state law.   They are all sued in their official capacities.

## JURISDICTION & VENUE

10.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights violations), 2201 (declaratory relief), and 2202 (further relief).   This action arises under the Eighth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. § 1983.

11.     Venue in this Court is proper under 28 U.S.C. § 1391, and this Court has personal jurisdiction over the defendants in this matter because the events giving rise to this claim – both executions and the procurement and maintenance of drugs used in the lethal injection process – occur in Huntsville, Texas.

---

**PLAINTIFFS' ORIGINAL COMPLAINT**                                    Page 4 of 28

## EXHAUSTION OF REMEDIES

12.     While Plaintiffs submit that exhaustion is not required, as there is no administrative procedure available to address the issues raised herein, Plaintiffs have nonetheless attempted to exhaust remedies by filing grievances with the TDCJ.

## FACTUAL ALLEGATIONS

### Introduction

13.     While litigation challenging Texas' lethal injection practices has been filed previously, the unprecedented nature of recent events and today's landscape render those prior lawsuits a nullity.   The landscape is also changing rapidly. While Plaintiffs recognize that this lawsuit is filed eight days before Mr. Yowell's scheduled execution, it was only last week, with the execution of Arturo Diaz on September 26, 2013, that TDCJ consumed what Plaintiffs' knew to be the last of their existing supply of Nembutal.   Until that event occurred, and TDCJ nonetheless continued to insist that Texas' execution protocol would not be changed, yet refused to timely disclose the source and nature of the drugs that they intend to use to execute Mr. Yowell, Plaintiffs' contend that this lawsuit was not ripe.  However, upon information and belief, the next execution Texas carries out will be with an entirely new drug – even if that drug is compounded pentobarbital

---

HO JAH01 758458 v5
9600000-000414  10/01/2013

– a fact that renders prior litigation a nullity. This fact could not be discerned until Mr. Diaz's execution, and the statements made by TDCJ in conjunction therewith. In short, it is the nature of the actions complained of – TDCJ's obfuscating and dilatory tactics – that compel both this litigation, and its timing.

14.     Pharmaceutical companies' increasing discomfort with their products being used in executions has drastically limited the availability of legally obtainable drugs. Departments of Correction around the country are thus scrambling to identify and procure the drugs necessary to carry out executions. As a result, Departments of Corrections – including the Texas Department of Criminal Justice - are turning to drugs and methods of execution that have never been used before, by any state. Some are banned for use in animal euthanasia. Despite – or perhaps because of – these facts, the TDCJ is doing everything in its power to shield the inevitable new protocols, which include untried drugs and non-FDA-approved drugs, from meaningful disclosure or scrutiny. In so doing, they remain entirely unaccountable to the public in carrying out the gravest of state responsibilities and to death sentenced inmates who have a constitutional right and interest in not being executed by cruel and unusual means.

15.     At the end of September, the TDCJ's existing supply of pentobarbital (brand name Nembutal) – the drug required by their current execution protocol –

---

expired.  In anticipation of its expiration, and because Nembutal is no longer available for use in executions, TDCJ has been exploring possible new drugs. Plaintiffs' counsel have gathered information that TDCJ is in possession of propofol, midazolam, and hyrdromorphone – drugs that have never been used in an execution, by any state.  Expert evidence available to date indicates that use of any of these drugs runs a substantial risk of grave pain.

16.    Plaintiffs' counsel have also gathered information that TDCJ attempted, in a deceptive manner, to procure compounded pentobarbital from at least one compounding pharmacy – a pharmacy that cancelled the order after finding out that TDCJ intended to use the drug for executions.[1]  Compounded drugs and compounding pharmacies, as current news stories evince, are cause for substantial concern, and risk any number of cruel deaths.

17.    While TDCJ has (after state court litigation) recently provided information in response to Public Information Act requests for the identity and source of lethal injection drugs, their responses are deceptive, limited, and only come after they consume the full amount of time they are allotted under the Public Information Act.  The last time TDCJ changed the execution protocol (from a three

---

[1] *See infra.*

HO JAH01 758458 v5
9600000-000414 10/01/2013

drug formula to a single drug execution), it gave the first inmate scheduled for execution using the new single drug protocol a mere two days' notice.

18.    Defendants' obstructionist and secretive approach makes it impossible for Plaintiffs to discover the method by which they will be executed in sufficient time to permit study of the drug or drugs, the source of the drug(s), and the quality or efficacy of the drug(s).  These facts must also be considered in light of the case law of the Fifth Circuit Court of Appeals previously condemning last minute requests for stays of execution based on pending actions challenging lethal injection protocols in a section 1983 action.  *See, e.g.*, *Reese v. Livingston*, 453 F.3d 289, 290 (5th Cir. 2006).[2]

19.    Without timely information regarding the origin or makers of the drug or drugs the TDCJ is planning to use to execute them, Plaintiffs are left with no means for determining whether the drugs are safe and will reliably perform their function, or if they are tainted, counterfeited, expired, or compromised in some other way.

20.    Plaintiffs are thus effectively precluded from litigating their right to be executed in a manner devoid of cruel and unusual pain.  As such, Plaintiffs are

---

[2] Plaintiffs submit that the filing of this complaint, only four days after TDCJ consumed the last of its supply of Nembutal, after diligent attempts to identify what drug or drugs TDCJ will use to execute plaintiffs, is timely – and that responsibility for any delay must be laid at Defendants' feet, as their obstructionist and delaying tactics are precisely what put Plaintiffs in this position – and controlled the timing of the filing of this lawsuit.

**PLAINTIFFS' ORIGINAL COMPLAINT**                                      **Page 8 of 28**

denied their right of access to the courts, due process, and to be free of cruel and unusual punishment. These practices are also unconstitutional because they preclude judicial review of the TDCJ's lethal injection procedure thereby violating the Supremacy Clause of the United States Constitution by blocking Plaintiffs' ability to vindicate their Eighth Amendment right against cruel and unusual punishment.

**Lethal Injection Drugs in the Possession of the TDCJ**

21.     According to documents obtained by Plaintiffs' attorneys, and upon information and belief, TDCJ has purchased and is currently in possession of the following drugs for use in lethal injections:

22.     **Propofol.** A drug that has never been used by any state for purposes of lethal injection and that runs a grave risk of causing excruciating pain upon injection.   Upon information and belief, only one other state - Missouri - has propofol in their possession for use in lethal injections, and concerns about its use and a substantial risk of intolerable pain have resulted in litigation that has halted executions in that state.

23.     TDCJ's purchase of propofol was made at or around the time when the manufacturing company licensed to sell injectable propofol in the United States (Hospira) had instituted end use control agreements with all of its distributors,

---

HO JAH01 758458 v5
9600000-000414 10/01/2013

seeking to prevent its product from being used for lethal injection.   Hospira is currently attempting to get TDCJ to return its supply of propofol, as Hospira does not wish to see its drugs used for executions.

24.   **Midazolam** and **Hydromorphone**.   No state has ever used these drugs for purposes of execution, and their efficacy and safety have never been tried or tested.  Two states – Ohio and Kentucky - currently call for administration of a combination of these drugs as part of their "back-up" protocols, but neither state has ever used its "back-up" plan.   Ohio would administer the drugs intramuscularly;[3] Kentucky's protocol calls for intravenous administration.

25.   TDCJ purchased its current supply of midazolam and hydromorphone from Pharmacy Innovations, a compounding pharmacy (though the purchased midazolam and hydromorphone are not compounded drugs) with offices in Jamestown, New York and Houston, Texas.  The TDCJ purchase order stated that the drugs were for and to be delivered to the "Huntsville Unit Hospital," with a street address matching that of the Huntsville Unit.  The Huntsville Unit Hospital has not existed since 1983.  Pharmacy Innovations was completely unaware that the drugs sold to TDCJ / the Huntsville Unit Hospital were purchased with the

---

[3] Intramuscular injection of these drugs is a method never before used in the world, and in many places prohibited as a method of euthanasia for animals.

**PLAINTIFFS' ORIGINAL COMPLAINT**                                                    **Page 10 of 28**

intent to use them for lethal injections. Pharmacy Innovations has no wish for any of the drugs it produces or sells to be used for such a purpose.

26. **Compounded pentobarbital**. Compounded drugs are mixed to order and are not FDA-approved. Problems with compounded drugs and compounding pharmacies abound. *See infra*. TDCJ attempted to purchase compounded pentobarbital from Pharmacy Innovations. TDCJ ordered the compounded pentobarbital, also, in the name of the "Huntsville Unit Hospital." The prescription for the pentobarbital was written, simply, for James Jones – who is in fact the warden of the Huntsville Unit, where executions take place. Thus, with good reason, Pharmacy Innovations was completely unaware that the drugs sold to TDCJ / the Huntsville Unit Hospital were purchased with the intent to use them for lethal injections. Pharmacy Innovations has no wish for any of the drugs it produces or sells to be used for such a purpose. Once they were informed of the purpose of the pentobarbital TDCJ was attempting to purchase, they cancelled the order before it had been filled.

27. Upon information and belief, TDCJ has or is attempting to purchase additional compounded pentobarbital from other compounding pharmacies. Use of compounded pentobarbital would constitute a significant change in the lethal injection protocol, a change that adds an unacceptable risk of pain, suffering and

---

HO JAH01 758458 v5
9600000-000414 10/01/2013

harm to the Plaintiffs if and when they are executed. Compounding pharmacies are not subject to stringent FDA regulations,[4] and the sources from which they obtain the active pharmaceutical ingredients ("APIs") for their drug concoctions are often part of the global "grey market," which is one of the leading sources for counterfeit drugs entering the United States. Even if the API obtained and used by the compounding pharmacy is not counterfeit, there is a significant chance that it could be contaminated, creating a grave likelihood that the lethal injection process could be extremely painful, or harm or handicap Plaintiffs without actually killing them.

28.     Although TDCJ is no longer in possession of unexpired pentobarbital, they have not acknowledged that they will be changing the protocol, what the new protocol will be, or what the new drugs will be – despite the fact that the next scheduled execution is little more than eight days away (Mr. Yowell, on October 9, 2013). TDCJ is experimenting with new drugs and obscuring the information from the public, from the courts, and from Plaintiffs. No studies document their use in this manner, and TDCJ has not disclosed the sources, if any, upon which they rely

---

[4] Congress is currently considering legislation that will give the FDA some oversight of compounding pharmacies. *See* Tavernise, *More Sway for F.D.A. is Object of New Bill*, New York Times, (Sept. 26, 2013), available at http://www.nytimes.com/2013/09/26/us/politics/more-sway-for-fda-is-object-of-new-bill.html

PLAINTIFFS' ORIGINAL COMPLAINT                                        Page 12 of 28

to assure that execution with propofol, or midazolam and hydromorphone will not constitute cruel and unusual punishment.

29.     This uncertainty and the unnecessary suffering and mental anguish it creates for Plaintiffs is an Eighth Amendment violation, and the fact that the state, through the TDCJ, is keeping this information from Plaintiffs also violates their right of meaningful access to the courts to challenge the process by which they will be executed, and the right of due process. These practices are also unconstitutional because they preclude judicial review of the TDCJ's lethal injection procedure, thereby violating the Supremacy Clause of the United States Constitution by blocking Plaintiffs' ability to vindicate their Eighth Amendment right against cruel and unusual punishment.

## LEGAL CLAIMS

30.     Plaintiffs allege that TDCJ's failure to timely disclose changes in Texas' lethal injection protocol, including the drugs TDCJ intends to use to carry out Texas executions, and their source, violates their right of access to the courts, their right to due process, and further violates the Supremacy Clause of the United States Constitution.  TDCJ's failures further subject Plaintiffs to a substantial risk of harm, thus violating their right under the Eighth Amendment to the United States Constitution.

---

HO JAH01 758458 v5
9600000-000414  10/01/2013

**I.**     **The State's failure to timely disclose information regarding the lethal injection drugs it intends to use, their source, concomitant protocol, and the means undertaken to ensure that such drugs will not subject Plaintiffs to a substantial risk of harm denies Plaintiffs their federal constitutional rights to meaningful access to the Courts.**

31.     Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 30.

32.     The right of access to the courts is a "fundamental constitutional right" that states are bound "to insure . . . is adequate, effective, and meaningful." *Bounds v. Smith*, 430 U.S. 817, 828, 822 (1977). "Meaningful access means that state authorities must ensure that inmates have "'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.""" *Gibson v. Turpin*, 270 Ga. 855, 858 (1999) (quoting *Lewis v. Casey*, 518 U.S 343, 351 (1996) (internal citation omitted)).

33.     "[R]egulations and restrictions which bar adequate, effective and meaningful access to the courts are unconstitutional." *Howard v. Sharpe*, 266 Ga. 771, 772 (1996) (citing *Bounds*, 410 U.S. 817; *Procunier v. Martinez*, 416 U.S. 396, 419 (1974); *Johnson v. Avery*, 393 U.S. 483, 490 (1969)).

34.     The United States Supreme Court in *Baze v. Rees*, 553 U.S. 35 (2008), recognized that an execution method that presents a "substantial risk of serious harm" or an "objectively intolerable risk of harm" may violate the Eighth

---

PLAINTIFFS' ORIGINAL COMPLAINT                                             Page 14 of 28

Amendment. 553 U.S. at 50. Moreover, "subjecting individuals to a risk of future harm – not simply actually inflicting pain – can qualify as cruel and unusual punishment." *Id.* at 49. Accordingly, a condemned inmate may file suit in state or federal court to enjoin his execution on the basis of such an Eighth Amendment challenge. *See, e.g., Baze v. Rees, supra; Hill v. McDonough*, 547 U.S. 573 (2006) (holding that Eighth Amendment challenge to lethal injection may be brought pursuant to 42 U.S.C. § 1983).

35.    TDCJ's tactics regarding the drugs and methods it intends to use to execute Plaintiffs erect a virtually insurmountable barrier to the filing and prosecution of a colorable Eighth Amendment claim. Plaintiffs, including Mr. Yowell - the inmate next scheduled for execution – do not know the drug or drugs or the method that will be used to execute them. Nor has it provided any information regarding the professional qualifications of the participants.

36.    Information about what drug(s) TDCJ intends to use is critical to an assessment of the likelihood of unnecessary and excruciating pain and suffering. Neither propofol nor a midazolam / hydromorphone combination have ever been used for purposes of execution. To proceed with any of these drugs amounts to experimentation that must be reviled by any civilized society. TDCJ has failed to disclose what information, if any, they have researched, gathered, or relied upon to

---

evaluate the efficacy or effect of such drug or drugs when used in lethal doses for execution.

37. If TDCJ currently possesses or manages to purchase compounded pentobarbital, grave concerns arise – risks that Plaintiffs are unable to assess without additional information. As an initial matter, Plaintiffs have no means to determine the purity of the API from which the injectable form of pentobarbital has been or is to be made; whether the API has been cut (i.e., diluted) with any substances (which would impact the potency of the final product); whether the API is contaminated with either particulate foreign matter or a microbial biohazard that could lead to a severe allergic or neurotoxic reaction upon injection.

38. Moreover, Plaintiffs have no means to assess the qualifications or not of the compounding pharmacy and its agents; the adequacy of its quality assurance, if any; whether the facilities are equipped to make sterile products or to test both the identity and purity of the API; and a host of other potential problems. Plaintiffs accordingly have no means to determine the risk that, for instance, the lethal injection drug that is manufactured for their executions will or will not actually consist of pentobarbital; if so, that it will contain a dose necessary to kill them, rather than simply to injure and maimthem, possibly irreparably; that it will have the proper pH so that it does not burn or possibly decimate the veins at the

---

HO JAH01 758458 v5
9600000-000414 10/01/2013

injection site; or that it will not be filled with particulate or biological matter that may lead to a painful allergic reaction to fungus or toxins that have no place in a lethal injection drug.

39.   It is "relatively immutable in our jurisprudence . . . that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue." *Greene v. McElroy*, 360 U.S. 474, 496 (1959). *See, e.g., United States v. Nixon*, 418 U.S. 683, 712–13 (1974) ("the allowance of the privilege to withhold evidence that is demonstrably relevant in a criminal trial would cut deeply into the guarantee of due process of law and gravely impair the basic function of the courts."

40.   The information Defendants refuse to timely disclose is critical to an assessment of the likelihood that Plaintiffs' execution will be botched and/or that it will inflict unnecessary and excruciating pain and suffering, and is at odds with the "'concepts of dignity, civilized standards, humanity, and decency'" that animate the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 11 (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)).[5]   *See Brewer v. Landrigan*, 131 S. Ct. 445

---

[5] The basic concept underlying the Eighth Amendment is nothing less than the dignity of man . . . . The Amendment must draw its meaning from the evolving **standards of decency that mark the progress of a maturing society."** *Atkins v. Virginia*, 536 U.S. 304, 311–12 (2002) (quoting *Trop v. Dulles*, 356 U.S. 86, 100–101 (1958)).

HO JAH01 758458 v5
9600000-000414  10/01/2013

(2010) (vacating stay on grounds that "speculation [regarding the effect of obtaining lethal injection drugs from a foreign source] cannot substitute for evidence that the use of the drug is 'sure or very likely to cause serious illness and needless suffering.'") (citing *Baez*, 553 U.S. at 50).

**II.   The State's failure to timely disclose information regarding the lethal injection drugs it intends to use, their source, concomitant protocol, and the means undertaken to ensure that such drugs will not subject Plaintiffs to a substantial risk of excruciating pain abridges Plaintiffs rights pursuant to the Eighth and Fourteenth Amendments, in violation of the Supremacy Clause of the United States Constitution.**

41.   Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 40.

42.   Article VI of the Constitution establishes that the Constitution is the "supreme Law of the Land." As the Constitution is "the fundamental and paramount law of the nation . . . an act of the legislature [that is] repugnant to the constitution, is void." *Marbury v. Madison*, 5 U.S. 137, 177 (1803). As the U.S. Supreme Court has observed, every state legislator and executive and judicial officer takes an oath pursuant to Article VI to support the Constitution and cannot "war against the Constitution without violating his undertaking to support it." *Cooper v. Aaron*, 358 U.S. 1, 18 (1958) (citing *Ableman v. Booth*, 62 U.S. 506, 524-25 (1858) (oath reflects framers' "anxiety to preserve the Constitution 'in full

force, in all its powers, and to guard against resistance to or evasion of its authority, on the part of a State . . . .'")).

43.     Accordingly, the U.S. Supreme Court has held that "constitutional right . . . can neither be nullified openly and directly by state legislators or state executive or judicial officers, nor nullified indirectly by them through evasive schemes . . . whether attempted 'ingeniously or ingenuously." *Smith v. Texas*, 311 U.S. 128, 132 (1940) (emphasis added); *see also Cooper, supra, accord.* Indeed, the Supreme Court has held that it will find preemption wherever the challenged state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 372–73 (2000), (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 (1941)). Further, the Fourteenth Amendment directs that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States . . . nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.   The supremacy of this edict is unchallengeable. Accordingly, the Supremacy Clause will not tolerate any legislative act that infringes upon the protections provided by constitutional rights.

> A State acts by its legislative, its executive, or its judicial authorities.
> It can act in no other way.  The constitutional provision, therefore,
> must mean that no agency of the State, or of the officers or agents by
> whim its powers are exerted, shall deny to any person within its

---

**PLAINTIFFS' ORIGINAL COMPLAINT**                                    **Page 19 of 28**

> jurisdiction the equal protection of the laws. Whoever, by virtue of public position under a State government, denies or takes away the equal protection of the laws, violates the constitutional inhibition; and as he acts in the name and for the State. This must be so, or the constitutional prohibition has no meaning . . . . Thus the prohibitions of the Fourteenth Amendment extend to all action of the State denying equal protection of the laws; whatever the agency of the State taking the action, or whatever the guise in which it is taken.

*Cooper*, 358 U.S. at 16–17 (internal quotations and citations omitted).

44.     As discussed *supra*, the actions that Plaintiffs challenge conceal from judicial process the information necessary to evaluate the true nature of the substances TDCJ intends to use to execute them, the manner, or the safeguards, if any, TDCJ has employed to ensure Plaintiffs will not be subjected to a substantial risk of extraordinary pain. These actions (and inactions) accordingly have the effect of preventing Plaintiffs, the public, and the Court from determining whether Plaintiffs' executions by lethal injection will comport with the Eighth Amendment's prohibition against cruel and unusual punishment. By depriving Plaintiffs of the means to determine whether their rights will be violated, Defendants are effectively nullifying those rights. The Constitution will not abide any state law or actions by state officials that abridge the protections that it provides.

---

HO JAH01 758458 v5
9600000-000414  10/01/2013

**III.    Due Process forbids Plaintiffs' execution when Defendants fail to timely disclose information critical to a determination of whether its intended method of execution violates the prohibition against cruel and unusual punishment.**

45.    Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 44.

46.    It would be a grotesque injustice to permit the State of Texas to proceed with Plaintiffs' execution while refusing to disclose the very information that could demonstrate that the intended manner of killing Plaintiffs will violate the state and federal constitutions.

47.    "The core of due process is the right to notice and a meaningful opportunity to be heard." *LaChance v. Erickson*, 522 U.S. 262, 266 (1998).  The State's refusal to timely disclose the drug(s) it intends to use to execute Plaintiffs, the source of any compounded pentobarbital (if that is what intends to use) and the manner in which it was made, and the efforts undertaken to ensure that Plaintiffs' executions by entirely untried methods will not pose a substantial risk of excruciating pain is an outright denial of these most basic components of due process. *See, e.g., Arthur v. Thomas*, 674 F.3d 1257 (11th Cir. 2012) (vacating district court's dismissal of lethal injection challenge and noting that, in light of "the veil of secrecy that surrounds Alabama's execution protocol, it is certainly not speculative and indeed plausible that Alabama will disparately treat Arthur because

---

HO JAH01 758458 v5
9600000-000414  10/01/2013

the protocol is not certain and could be unexpectedly changed for his execution").

48.     The U.S. Supreme Court has stated that "[t]he fundamental requisite of due process of law is the opportunity to be heard" when one's rights are to be affected.   *Mullane v. Central Hanover Bank*, 339 U.S. 306, 314 (1950) (quoting *Grannis v. Ordean*, 234 U.S. 385, 394 (1914)). Such an opportunity, however, is worthless unless an inmate is given "meaningful" notice of matters that are pending against him so he may present his objections. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 533 ("It is equally fundamental that the right to notice and an opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner.' These essential constitutional promises may not be eroded.").   Defendants have failed to provide timely and meaningful notice regarding changes in the Texas execution protocol and the drugs that the State intends to use to execute Plaintiffs, have a pattern of obstruction and deception in the information that it has disclosed, and in the efforts it has taken to procure lethal injection drugs.

49.     Due process demands that the State be enjoined from carrying out Plaintiffs' executions while it refuses to disclose information critical to a determination of the constitutionality of its intended actions. Enjoining Plaintiffs' executions fully comports with precedent from the United States Supreme Court recognizing that due process does not permit the government to benefit from its

---

**PLAINTIFFS' ORIGINAL COMPLAINT**                                      Page 22 of 28

suppression of information that might undermine the legality of its intended actions.

50.    In criminal cases, for instance, "[i]f the Government refuses to provide state-secret information that the accused reasonably asserts is necessary to his defense, the prosecution must be dismissed." *Gen. Dynamics Corp. v. United States*, 131 S. Ct. 1900, 1905–06 (2011). *See, e.g.*, *Jencks v. United States*, 353 U.S. 657, 672 (1957) (holding that a "criminal action must be dismissed when the Government, on the ground of privilege, elects not to comply with an order to produce, for the accused's inspection and for admission in evidence, relevant statements or reports in its possession of government witnesses touching the subject matter of their testimony at trial"); *cf. Roviearo v. United States*, 353 U.S. 53, 60–61 (1957) (holding that "[w]here disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations, the trial court may require disclosure and, if the Government withholds the information, dismiss the action").

51.    Accordingly, the State should be enjoined from proceeding with Plaintiffs' execution until such time as it has timely revealed the information outlined above, and Plaintiffs have been provided a reasonable opportunity to be

heard on any Eighth Amendment challenge to their use.

**IV.    The State's failure to timely disclose information regarding the lethal injection drugs it intends to use, their source, concomitant protocol, and the means undertaken to ensure that such drugs will not subject Plaintiffs to a substantial risk of excruciating pain violates Plaintiffs' right to be free from cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution.**

52.    Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 51.

53.    The Eighth Amendment prohibits cruel and unusual punishments and is applicable to the states through the Fourteenth Amendment.  This prohibition includes the "infliction of unnecessary pain in the execution of a death sentence." *Louisiana ex. rel. Francis v. Resweber*, 329 U.S. 459, 463 (1984); *see also Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (holding that the Eighth Amendment prohibits the "unnecessary and wanton infliction of pain").

54.    Because it is impossible to determine with certainty whether an inmate will suffer from unnecessary pain during an execution before that execution occurs, the question of whether a particular execution procedure will inflict unnecessary pain involves an inquiry as to whether the inmate is "subject to an unnecessary risk of constitutional pain or suffering." *Cooper v, Rimmer*, 379 F.3d 1029, 1033 (9th Cir. 2004); *Fierro v. Gomez*, 77 F.3d 301, 307 (9th Cir. 1996)

---

PLAINTIFFS' ORIGINAL COMPLAINT                                                      Page 24 of 28

("Campbell also made clear that the method of execution must be considered in terms of the risk of pain."); *Campbell v. Wood*, 18 F.3d 662, 687 (9th Cir. 1994). A medical or quasi-medical procedure inherently carries a risk that a mistake or accident might cause unforeseen pain; therefore, the Eighth Amendment does not require executioners to eliminate all possible risks of pain or accidents from their execution protocols. *See Resweber*, 329 U.S. at 464; *Campbell*, 18 F.3d at 687. The Eighth Amendment does, however, prohibit the unnecessary risk of pain, which can occur when no protocol exists and/or experience with the execution procedure demonstrates that there are foreseeable problems that will result in the inmate suffering intense pain that alternative procedures do not engender.

55.     Upon evidence, information, and belief, Defendants are considering execution by methods (drugs) that have never been used, or are considering the use of compounded pentobarbital – a scenario that risks numerous problems that create a high risk of excruciating pain.  By failing to timely disclose the method of execution by which they intend to execute Plaintiffs, and the source of the drugs for such executions, and by failing to timely disclose what they have done to ensure that Plaintiffs' executions by a means never before used on a human being will be devoid of extraordinary pain, Defendants create a serious and unnecessary risk of unusual and excruciating pain – an outcome contrary to the "evolving

---

**PLAINTIFFS' ORIGINAL COMPLAINT**                                    **Page 25 of 28**

standards of decency" *Trop v. Dulles,* 356 U.S. 86, 101 (1958); *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004).

56.    Thus, by virtue of the above stated facts, Defendants, in carrying out the execution of Plaintiffs, will deprive Plaintiffs of their rights under the Eighth and Fourteenth Amendments to be free from cruel and unusual punishment, in violation of 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for:

1.    Temporary, preliminary, and permanent injunctive relief to enjoin the Defendants, their officers, agents, servants, employees, and all persons acting in concert with them from executing Plaintiffs until such time as Defendants can demonstrate the integrity and legality of any and all controlled substances they intend to use for Plaintiff's execution;

2.    Temporary, preliminary, and permanent injunctive relief to enjoin the Defendants, their officers, agents, servants, employees, and all persons acting in concert with them from executing Plaintiff until such time as Defendants can demonstrate that measures are in place to allow for Plaintiff's execution in a manner that complies with the Eighth Amendment to the United States Constitution;

---

**PLAINTIFFS' ORIGINAL COMPLAINT**                                   Page 26 of 28

3.      Timely and meaningful disclosure to Plaintiffs of all information deemed relevant to a determination of the constitutionality of their planned execution;

4.      A declaration that Defendants' actions violate Plaintiffs' Eighth and Fourteenth Amendment rights; and

5.      Any other such relief as this Court deems just and proper.

6.      Plaintiffs also request that this Court grant reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and the laws of the United States, as well as for costs of suit.

Dated this 1st day of October, 2013.

\* \* \*

Respectfully Submitted,

BY:   */s/ Bradley E. Chambers*
_____
**Bradley E. Chambers**
Texas Bar No. 24001860
Federal ID No. 22008
**Bobbie Stratton**
Texas Bar No. 24051394
Federal ID No. 1037350
**Jessica Hinkie**
Texas Bar No. 24074415
Fed. Id. 1366991
**BAKER DONELSON**
**BEARMAN CALDWELL &**
**BERKOWITZ, PC**
1301 McKinney, Suite 3700
Houston, Texas 77010
(713) 650-9700 – Telephone
(713) 650-9701 – Facsimile
bchambers@bakerdonelson.com
bstratton@bakerdonelson.com
jhinkie@bakerdonelson.com

Maurie Levin
Texas Bar No. 00789452
211 South Street #346
Philadelphia PA  19147
(512) 294-1540 – Telephone
(215) 733-9225 – Facsimile
maurielevin@gmail.com

*Attorneys for Plaintiffs*

---

**PLAINTIFFS' ORIGINAL COMPLAINT**                                      **Page 28 of 28**