| | | |
|---|---|---|
| UNITED STATES DISTRICT COURT | | SOUTHERN DISTRICT OF TEXAS |

Thomas Whitaker, et al., §
§
       Plaintiffs, §
§
versus §      Civil Action H-13-2901
§
Brad Livingston, et al., §
§
       Defendants. §

## Opinion on Preliminary Injunction

1.     *Background.*

    Michael Yowell has asked the court to prevent the state of Texas from executing the death warrant from his conviction for three murders. He and two other people under death sentences want time to contest whether the drugs Texas intends to use will inflict constitutionally objectionable pain. Because Yowell will be executed on October 9, 2013, he seeks an emergency order stopping it.

    People of goodwill can debate the merits of death as a penalty. The choices of the people of Texas are made law – public policy – by legislatures and governors chosen by voters. Courts may only review those choices to see whether they exceed the limits on all governments in the Constitution. The death penalty is constitutional. A constitutionally acceptable manner of killing the defendant necessarily must exist. The legal question is the cruelty of the means.

    Thomas Whitaker, Perry Williams, and Michael Yowell – all inmates on death row – have complained that Texas's method of accomplishing their otherwise-constitutional death sentences is cruel under the Constitution. They ask the court to prevent officers of Texas from executing Yowell's sentence.

    The defendants are three officials of the Texas prison system – Brad Livingston, William Stephens, and James Jones. They have been sued instead of the state itself for peculiar twists in American law. They will be called Texas. It concedes that the Supremacy

Clause of the United States Constitution requires Texas to punish criminals under the Eighth Amendment by avoiding "cruel and usual punishments."

To support this extraordinary remedy, they must show: (a) a substantial likelihood of success on the merits, (b) a substantial threat of irreparable injury if the injunction is not issued, (c) a threatened injury if the injunction is denied that outweighs the harm that will result if it is granted, and (d) the requested injunction is consistent with the public's interest.

The plaintiffs say that (a) the use of pentobarbital from a compounding pharmacy to execute is cruel, (b) the process does not allow them to prove that it is cruel, and (c) governmental regularity requires Texas to guarantee a painless death.

All of their arguments – even those based on their right to due process – depend on their challenge under the Eighth Amendment. Procedural issues aside, the complaint is that Texas has acquired its drug from a compounding pharmacy rather than a manufacturer. They say that this raises the risk that a prisoner's reaction to defective ingredients will cause him unconstitutional pain as he dies. The single issue is cruelty.

2. Cruelty.

Execution by injecting pentobarbital is no longer controversial at law. During the hearing, Yowell conceded that he has no objection to this drug. His only issue is whether Texas's current supply of pentobarbital has a demonstrated risk of severe pain because it was acquired from a compounding pharmacy rather than a manufacturer. This risk must be shown to be substantial compared to known alternatives.

Use of pentobarbital is not new. Twenty-three inmates in Texas have been executed this way. Since July 9, 2012, Texas has publicly disclosed that it executes prisoners by injecting them with five grams of pentobarbital – the exact dosage that it will use on Yowell.

He has shown no defect in the current supply of pentobarbital. Eagle Analytical Services – a testing laboratory – found that the potency of Texas's current supply is 98.8%.

Yowell speculates about the danger of drugs purchased from compounding pharmacies. He raises everything that could go wrong with an intravenous drug – under- and over-potency; allergic reactions; fungal, viral, and bacterial infections; and adulterants – all without technical data to support (a) the presence of impurities, (b) the level to be

dangerous, (c) their likelihood of causing pain, or (d) the severity of that pain while the party is conscious.

Yowell says that he has only had the specifics of the drug for a few days. That is partially true, but he has had years to get the foundational medical science about impurities. He needs to have serious support for his claim about painful impurities in addition to support for actual contamination.

He offers an affidavit from a case last year in Georgia. In that case, Georgia refused to disclose even basic information about the drug it planned to use for a lethal injection. The court held that data like the identity of the drug had to be disclosed. Without those facts, the state had effectively barred court review, and that violated the Constitution of the State of Georgia.[1] The affidavit was given by Larry D. Sasich, who holds a doctorate in pharmacy. Sasich repetitively assumes and generalizes for 17 pages without tethering it to the facts of the Georgia case much less this one.

Yowell also offers an incendiary press release from an advocacy group that did not bear on the issues here. He then urged that drugs from a compounding pharmacy in Massachusetts caused a fungal meningitis outbreak that killed 48 people. Pentobarbital will kill Yowell in five to eighteen minutes and his consciousness will be diminished almost immediately; therefore, infections like meningitis will not hurt him because they require weeks to incubate.

Texas is not using pentobarbital therapeutically; the scientific aspects of traditional medicine do not apply here. He has no reliable data that compares the risk of contaminants in compounded pentobarbital to pentobarbital from a federally-regulated manufacturer. He relies on decade-old testimony to the Senate about the correct balance of national-state regulation of the medicinal use of compounded drugs. That is a question of governmental structure. Sasich offered no specifics about particular contaminants, harmful levels, pain levels associated with each contaminant, or probability that Georgia or Texas's dose may be highly painful.

---

[1] Hill v. Owens, et al., No. 2013-CV-233771 (Ga. Superior Ct. July 18, 2013).

3.   *Process.*

Conceding that his evidence of cruelty is weak, Yowell blames Texas for having concealed that it planned to execute him with compounded pentobarbital. He says that this prevented him from having access to courts to litigate his claims effectively. In 1977, Texas adopted lethal injection. In 1982, it used it for the first time. Controversy about it has been broad and constant. Yowell has been under this death sentence for 13 years. Since June of 2012, Texas has notified the public on one of its websites that it uses pentobarbital. The only thing that has arisen recently is the source of the ingredients, and that is a potential problem with all procurement.

Parenthetically, since 1998, Yowell has litigated this case with lawyers furnished by the public. This country's courts have been open, and they have properly made sure that he had full use of them.

Texas was ordered to disclose its method of execution within hours of this suit's having been filed. It complied immediately. He has known since June 3, 2013, that he would be executed on October 9, 2013. He also knew that Texas was running out of its traditional source of pentobarbital. If he wanted to know about the drug it planned to use, he could have sued sooner. Texas has not been secretive or recalcitrant.

After the court's hearing on October 4, 2013, Yowell notified the court that the compounding pharmacy was demanding that Texas return the drugs because it was being harassed. Yowell worries that Texas may have to use a different drug to execute him. This is a guess piled on an assumption. Texas is not obliged to return the drugs because the pharmacy was willing to help it secretly but is retreating from helping publicly – a peculiar ethic. A letter from the target of an attack is not the state's responsibility. If it changes drugs and if it does not supply Yowell with the data procedural regularity requires, he may access the court then.

4.   *Conclusion.*

Whitaker, Williams, and Yowell have not shown that (a) they are likely to succeed in proving an objectively intolerable risk of harm, (b) they will be injured without an injunction, (c) this potential injury outweighs the harm of not enforcing Texas's judgment, and (d) the requested injunction is consistent with the public's interest. Yowell will, of

course, be executed, but his harm is the probability of the methods having been cruel and not the execution itself.

The motion for a preliminary injunction will be denied. "Though the penalty is great and our responsibility heavy, our duty is clear."² Michael Yowell's execution will not be stayed.

Signed on October 5, 2013, at Houston, Texas.

Lynn N. Hughes
United States District Judge

---

² Rosenberg v. United States, 346 U.S. 273, 296 (1953) (Tom Clark).