IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

THOMAS WHITAKER and §
PERRY WILLIAMS, §
   Plaintiffs, §
  §
vs. §     CIVIL ACTION NO. H-13-2901
  §
BRAD LIVINGSTON, et al §
   Defendants. §

## PLAINTIFFS' SECOND AMENDED COMPLAINT

The Plaintiffs, THOMAS WHITAKER and PERRY WILLIAMS move the Court for entry of judgment in their favor against Brad Livingston et al and in support plead as follows:

## NATURE OF ACTION

1.    This action is brought pursuant to 42 U.S.C. § 1983 for violations and threatened violations of Plaintiffs' rights under the First, Sixth, Eighth and Fourteenth Amendments to the U.S. Constitution to be free from cruel and usual punishment, right of access to the courts, right to counsel, and right to due process of law.  Plaintiffs seek injunctive relief.

## PLAINTIFFS

2.     Plaintiff Thomas Whitaker is a person within the jurisdiction of the State of Texas.  He is currently a death-sentenced inmate under the supervision of the Texas Department of Criminal Justice, TDCJ #999522.  He is confined at the Polunsky Unit in Livingston, Texas.  His federal habeas appeal is currently pending in the Southern District of Texas, Houston Division.  No execution date is currently scheduled.

3.     Plaintiff Perry Williams is a person within the jurisdiction of the State of Texas.  He is currently a death-sentenced inmate under the supervision of the Texas Department of Criminal Justice, TDCJ #999420.  He is confined at the Polunsky Unit in Livingston Texas.  His state and federal habeas appeals have been completed.  Mr. Williams was scheduled for execution on September 29, 2015.  On September 1, 2015, that date was withdrawn by the state habeas court. There is no execution date currently scheduled.

4.     Plaintiffs are not challenging their convictions or sentences of death in this action.  They are challenging the manner and means by which Defendants will carry out their sentences of death.

## **DEFENDANTS**

5.     Defendant Brad Livingston is the Executive Director of the Texas Department of Criminal Justice.  Mr. Livingston has appeared herein.

6.     Defendant William Stephens is the Director of the Correctional

Institutions Division of the Texas Department of Criminal Justice ("TDCJ"), and holds the power, by statute, to determine and supervise the manner by which death sentenced inmates are executed.  Tex. Code Crim. Proc. art. 43.14. Mr. Stephens has appeared herein.

7.     Defendant James Jones is the Senior Warden of the Huntsville Unit, where executions take place.  Mr. Jones has appeared herein.

8.     Defendants Unknown Executioners are employed by the Texas Department of Criminal Justice and carry out executions in Texas.  Plaintiffs do not yet know their identities because the TDCJ conceals them.

9.     The Defendants are all state officials acting, in all respects relevant to this action, under color of state law.  They are all sued in their official capacities.

## <u>JURISDICTION & VENUE</u>

10.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights violations), 2201 (declaratory relief), and 2202 (further relief).  This action arises under the Eighth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. § 1983.

11.     Venue in this Court is proper under 28 U.S.C. § 1391, and this Court has personal jurisdiction over the defendants in this matter because the events giving rise to this claim – both executions and the procurement and maintenance of drugs used in the lethal injection process – occur in Huntsville, Texas.

## EXHAUSTION OF REMEDIES

12.     While Plaintiffs submit that exhaustion is not required, as there is no administrative procedure available to address the issues raised herein, Plaintiffs have nonetheless attempted to exhaust remedies by filing grievances with the TDCJ.

## FACTUAL ALLEGATIONS

13.     Under Texas law, Defendants have the statutory authority and duty to establish and administer a lethal injection protocol.  The Texas Code of Criminal Procedure provides:

> Whenever the sentence of death is pronounced against a convict, the sentence shall be executed at any time after the hour of 6 p.m. on the day set for the execution, by intravenous injection of a substance or substances in a lethal quantity sufficient to cause death and until such convict is dead, such execution procedure to be determined and supervised by the Director of the Institutional Division of the Texas Department of Criminal Justice.

Tex. Code Crim. Proc. art. 43.14 (Vernon Supp. 2004–2005). "No torture, or ill treatment, or unnecessary pain, shall be inflicted upon a prisoner to be executed under the sentence of the law."  *Id*. art. 43.24.

14.     The current execution protocol was written and adopted in June, 2012.

15.     TDCJ's Director has the unilateral power to change the protocol at any moment.  Tex. Code Crim. Proc. art. 43.14.

---

16.    As detailed below, TDCJ's current Execution Protocol does not contain the safeguards necessary to protect plaintiffs from the risk of cruel and unusual punishment at the time of their executions.

17.    Texas currently uses compounded pentobarbital to carry out executions, which is classified by the Drug Enforcement Administration (DEA) as a Schedule II controlled substance.

18.    In September 2013 Texas began purchasing and using compounded – rather than manufactured - pentobarbital to carry out executions.

19.    Pharmacy compounding is a practice by which a pharmacist combines, mixes, or alters ingredients in response to a prescription to create a medication tailored to the medical needs of an individual patient. Independent laboratories can test compounded drugs for a variety of measures, including identity, strength, and contaminants.

20.    Commercial pharmaceutical products (manufactured pharmaceutical products) require compliance with a rigorous licensing process and are the result of substantial scientific research and development programs.

21.    Pharmaceutical compounded preparations (compounded preparations) have numerous exemptions from licensing process and accordingly, do not require established scientific investigations ("proof") for specific formulations.

22.     Compounded pentobarbital is classified as a high-risk sterile injectable. *See* United States Pharmacopeia ("USP") General Chapter <797>, Pharmaceutical Compounding – Sterile Preparations.[1]

23.     Compounded preparations are assigned a "beyond use date," (BUD) intended to prevent degradation of a compound that the USP has calculated is likely to occur after a set time frame.  Absent extended sterility testing, USP <797> sets the BUD for high-risk compounded sterile preparations as follows:

- 24 hours, if stored at room temperature,
- 72 hours, if kept refrigerated, or
- 45 days, if kept in a solid, frozen state

24.     TDCJ also has in their possession three other drugs purchased for possible use in executions:  propofol, midazolam, and hydromorphone.   Upon information and belief, TDCJ is in possession of these drugs in case they are unable to purchase additional  compounded pentobarbital.

25.     To date, the only information Defendants have disclosed regarding the drugs with which they are currently carrying out executions is:

- The June 2012 execution protocol;
- A redacted laboratory sheet reflecting potency and sterility testing conducted on the current batch of drugs in their possession;
- The Drug Enforcement Agency (DEA) Form 222 that accompanied the most recent purchase of compounded pentobarbital;
- The Huntsville Unit Pentobarbital storage inventory;

---

[1] The USP is the seminal scientific advisory publication concerning the compounding of sterile injectables.

- A redacted credit card receipt for the relevant purchase of the compounded drugs; and
- A 'use by'[2] date for the drugs currently in their possession, which is conveyed in an email from Defendants' general counsel.

26.    According to information provided by Defendants regarding the current supply of compounded pentobarbital, as well as information previously provided regarding prior purchases, the drugs TDCJ uses to carry out executions are tested one time, shortly before delivery to TDCJ.

27.    Upon information and belief, no additional testing is conducted before the drug is used in an execution.

28.    Defendants' current supply of compounded pentobarbital was received on or about June 11, 2015.  The testing of the current supply was performed on April 17, 2015, and the results of those tests (sterility and potency) are reflected on a laboratory sheet dated April 28, 2015.  The "use by" date of the current supply disclosed by Defendants is February 9, 2016.

29.    A previous batch of compounded pentobarbital was received by Defendants on or about April 28, 2015.  The testing of that previous batch was performed at the same time as the testing performed on the current batch, (tests performed on April 17; lab sheet dated April 28).  The "use by" date of the previous batch was July 14, 2015.

---

[2] "Use by date" is the terminology used in Defendants' communications.

30.    The "use by" date assigned to previously tested supplies of compounded pentobarbital has been anywhere from five months to over a year from the date of testing.

31.    The integrity, potency, and sterility of compounded pentobarbital are affected by: the quality of the "Active Pharmaceutical Ingredient" (API) used to make the drug; the quality of the compounder and the conditions of the laboratory in which the drug is compounded; the time between compounding and use; the assigned BUD and the qualifications of the person assigning same; and the conditions under which the drug is stored after compounding.

32.    TDCJ purchases compounded pentobarbital for use in executions in small batches, generally ranging from three to ten vials.  Upon information and belief, each batch is compounded separately. It is unknown if a different API is used for each batch.  It is unknown if the same compounder, compounding facility, or testing laboratory are used each time.

## LEGAL CLAIMS

33.    Plaintiffs incorporate by reference each and every statement and allegation set forth throughout this Second Amended Complaint as if fully set forth herein.

**Count One: The absence of any requirement that Defendants notify Plaintiffs of any changes in the lethal substance to be used to carry out executions, or changes to their lethal injection protocol, deprives Plaintiffs of their ability to protect their right to not be subject to cruel and unusual**

**punishment, and violates their right to due process, notice, an opportunity to be heard, and access to courts in violation of the Eighth and Fourteenth Amendments to the United States Constitution.**

34.   Under the Texas Code of Criminal Procedure, the TDCJ's Director has the unilateral power to change the existing Execution Protocol at any moment. Tex. Code Crim. Proc. art. 43.14.   For example, although the TDCJ has represented that it currently uses compounded pentobarbital to carry out the executions, the Code does not require it to give Plaintiffs any notice at all if the Director chooses to change the drug used to carry out Plaintiffs' executions.

35.   This lack of a notice requirement means that Plaintiffs will not have sufficient time to litigate whether their executions will be carried out lawfully by Defendants.   Without timely and meaningful notice, Plaintiffs will be unable to bring an effective legal challenge to any unlawful aspects of their proposed execution, which violates the Due Process Clause of the Fourteenth Amendment.

36.   Further, the fact that the TDCJ can change its execution protocol at any time prevents Plaintiffs from having meaningful access to courts because they cannot litigate the means of their execution if they do not know what the means will be.

37.   Finally, the fact that the TDCJ can change its execution protocol at any time deprives Plaintiffs of their ability to protect their right to not be subject to cruel and unusual punishment.

**Count Two:  The absence of provisions that provide Plaintiffs access to counsel during the events leading up to and during the course of their execution deprives Plaintiffs of their right of access to counsel and the courts in violation of their rights under the First, Sixth and Eighth Amendments and pursuant to 18 U.S.C. §3599.**

38.    Each Plaintiff has a right to petition the government, guaranteed by the First and Fourteenth Amendments to the United States Constitution. This right exists during every stage of an execution.

39.    Each Plaintiff has a right to consult with and be represented by his counsel before the courts, guaranteed by 18 U.S.C. § 3599 and the Fourteenth Amendment to the United States Constitution. This right exists during every stage of an execution.

40.    The right to counsel and the right to petition the government provide the only mechanism whereby a condemned prisoner can challenge violations of the Eighth and Fourteenth Amendment that may occur on the day of a scheduled execution, including immediately before and during the execution.

41.    The current Execution Protocol limits Plaintiffs' access to counsel on the day of and during the events leading up to and during the course of their execution.

42.    Defendants' current informal process provides only limited access in the afternoon of an execution.  The Huntsville Unit Warden approves all access to

counsel.  Texas's execution protocol does not provide for access to counsel during the I.V. insertion or the execution process.

43.    By failing to guarantee Plaintiffs access to counsel and the courts up to and during their executions, Defendants will violate Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution and under 18 U.S.C. § 3599.

**Count Three: Plaintiffs' right to not be subject to cruel and unusual punishment, and their right to due process under the Eighth and Fourteenth Amendments are violated by: (1) Defendants' failure to conduct sufficient testing of the compounded pentobarbital prior to injection;  (2) Defendant's use of a "use by" date for the compounded pentobarbital that extends far beyond accepted scientific guidelines; (3) Defendants' carrying out of executions under the current Execution Protocol, which lacks appropriate safeguards to limit the risk that Plaintiffs will suffer severe pain at the time of their executions.**

44.    As a result of the facts set forth above and those enumerated herein, there is a substantial risk that Plaintiffs will suffer severe pain at the time of their executions.  That risk is "'substantial when compared to the known and available alternatives.'"  *Glossip v. Gross*, 576 U.S. __ (2015), slip op. at 13 (citing *Baze v. Rees*, 553 U.S. 35, 61 (2008)).  *See also Louisiana ex. rel. Francis v. Resweber*, 329 U.S. 459 (1984); *Gregg v. Georgia*, 428 U.S. 153 (1976); *LaChance v. Erickson*, 522 U.S. 262 (1998); *Mullane v. Central Hanover Bank*, 339 U.S. 306 (1950). *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004).

### A.    Defendants' Failure to Conduct Sufficient Testing

45.    The drugs TDCJ uses to carry out executions are tested one time, shortly before delivery to TDCJ.   Upon information and belief, no additional testing is conducted before the drug is used in an execution.

46.    As Plaintiffs' expert Jim Ruble has stated in his reports, without at least two potency measurements from the same batch of the compounded pentobarbital used by the TDCJ at separate points in time, one cannot perform an analysis to determine the exact degradation rate of the compounded pentobarbital TDCJ will use to execute Plaintiffs.  Given the fact that TDCJ's "use by" date is also contrary to USP <797>, as discussed below, this lack of information and testing makes it impossible to determine to what extent the compounded pentobarbital has degraded and what the risks to the inmate might be.  Thus, due to these unknowns, the failure to adequately test the batches of compounded pentobarbital subjects Plaintiffs to a substantial risk of suffering severe pain at the time of their executions.

### B.    TDCJ's "Use By" Date

47.    Absent extended sterility testing, USP <797> sets the Beyond Use Date for high-risk compounded sterile preparations as follows:

- 24 hours, if stored at room temperature,
- 72 hours, if kept refrigerated, or
- 45 days, if kept in a solid, frozen state

48.     The "Use By" date articulated by the TDCJ for the compounded pentobarbital it currently plans to use to execute inmates is nearly 10 months from the date of testing (February 9, 2016 for a supply tested on April 17, 2015).

49.     As has been articulated in the expert reports of Jim Ruble, it is his opinion that the BUD asserted by Defendants with respect to the compounded pentobarbital in their possession is not supported by the relevant provisions of the USP, and in fact, extends far beyond the recommended BUD.   The use of compounded pentobarbital that has long surpassed its recommended BUD to conduct executions raises grave concerns about potency, sterility, and stability of the pentobarbital, and thus of the risk of severe pain to the inmate.

## C.     The Execution Protocol

50.     TDCJ's current protocol does not contain the safeguards necessary to protect Plaintiffs from the risk of cruel and unusual punishment at the time of their executions.   The safeguards important to but lacking in Texas's protocol include but are not limited to the following:

- Failure to require that the requisite "medically trained" individual that is part of the drug team (*See* 2012 Protocol [Doc. 9-1], Section IV.A.; VII.C.) has currency in the practice of setting IV's or to have recently placed peripheral and / or central lines;

- Failure to require that the "designated staff on the Huntsville Unit . . . responsible for ensuring the purchase, storage and control of all chemicals used in lethal injection executions" (*Id*., Sec. V.B.) have the scientific background, expertise or training necessary to ensure the purchase of quality drugs, or to know the requisite storage and

control conditions necessary to ensure continued the drugs continued quality and efficacy;

- Failure to require that the "inventory and equipment check" and verification of "expiration dates" [sic] (*Id*.) is conducted by qualified individuals who are capable of recognizing indicators of sub par or otherwise problematic drugs or equipment;

- Failure to ensure that the person or persons responsible for "mix[ing]" [sic] (*Id*., Sec. VI) the lethal injection drugs and preparing the syringes is medically and scientifically qualified to perform those functions;

- Failure to ensure that the "medically trained individual" is competent to recognize if the "rate of flow is interrupted" (Sec. VII.C.) and / or if the lethal injection drugs are being injected into the flesh rather than the veins;

- Failure to provide for access to counsel during the IV insertion process, and failure to provide provisions for counsel to observe the IV insertion process;

- Failure to ensure that, if IV access in a part of the body other than the arm is necessary, that appropriately trained individuals have visual access to the insertion point;

- Failure to require anything other than "visible signs of life" before a back up drug is administered;

- Failure to specify a medically specific and sound manner of determining death upon the completion of the administration of the lethal injection drugs;

- Failure to provide for access to counsel if constitutional violations arise during the course of an execution; and / or

- Established measures for how to proceed if an execution goes awry.

---

**PLAINTIFFS' SECOND AMENDED COMPLAINT**                                    **Page 14 of 21**

51.    Without sufficient safeguards in the execution protocol, also detailed above, TDCJ cannot determine whether an inmate is subjected to severe pain at the time of his execution.

52.    The existing method of execution, and the lethal injection drugs used to carry out same, precludes Defendants from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.'"   *Id*. at 12 (citing *Baze*, 553 U.S. at 50

53.    A known and available alternative to Texas current execution method exists: a single dose of an FDA approved barbiturate, applied with appropriate safeguards and transparency that apply to both the execution process and the manner in which the drugs are selected, purchased, stored, and tested (all relevant to a determination of the drugs' efficacy and purity – that is, the risk that it will cause substantial pain – at the time of the execution.)  Appropriate safeguards and transparency are essential to any alternative method of execution.

**Count Four: Plaintiffs' right to not be subject to cruel and unusual punishment, and their right to due process under the Eighth and Fourteenth Amendments, notice, opportunity to be heard, and access to courts are violated by: (1) Defendants' failure to disclose information regarding the lethal substance or substances TDCJ intends to use to carry out Texas executions;  (2) Defendants' concealment of information about how the executions will be carried out.**

54.    TDCJ's failure to disclose information regarding the lethal substance or substances TDCJ intends to use to carry out Texas executions – information

relevant to the integrity, purity, stability and potency of the drug or drugs at the time of execution – violates their right to not be subject to cruel and unusual punishment, and their right to due process, notice, an opportunity to be heard, and access to courts, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

55.     Defendants' continued concealment of information, such as the method and means by which the compounding manufacturer prepares the drugs for executions, which would allow Plaintiffs the ability to ascertain, understand, and develop their potential claims, is further violation of due process, notice, an opportunity to be heard, and access to court.

56.     Defendants deliberate concealment of information, including sufficient notice of information about how Plaintiffs execution will be carried out, information about the lethal substances that will be used, and information about the training and qualifications of those tasked with carrying out the execution, violates Plaintiffs right of access to governmental information under the First and Fourteenth Amendments to the United States Constitution.

57.     Due process demands that the State be enjoined from carrying out Plaintiffs' executions while it continues to refuse to disclose in a timely and meaningful manner information critical to a determination of the constitutionality of its intended actions. Enjoining Plaintiffs' executions fully comports with

precedent from the United States Supreme Court recognizing that due process does not permit the government to benefit from its suppression of information that might undermine the legality of its intended actions.

58.    In criminal cases, for instance, "[i]f the Government refuses to provide state-secret information that the accused reasonably asserts is necessary to his defense, the prosecution must be dismissed." *Gen. Dynamics Corp. v. United States*, 131 S. Ct. 1900, 1905–06 (2011). *See, e.g., Jencks v. United States*, 353 U.S. 657, 672 (1957) (holding that a "criminal action must be dismissed when the Government, on the ground of privilege, elects not to comply with an order to produce, for the accused's inspection and for admission in evidence, relevant statements or reports in its possession of government witnesses touching the subject matter of their testimony at trial"); *cf. Roviearo v. United States*, 353 U.S. 53, 60–61 (1957) (holding that "[w]here disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations, the trial court may require disclosure and, if the Government withholds the information, dismiss the action").

59.    Accordingly, the State should be enjoined from proceeding with Plaintiffs' execution until such time as it has timely revealed the information

---

outlined above, and Plaintiffs have been provided a reasonable opportunity to be heard on any Eighth Amendment challenge to their use.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request:

    A.    That Defendants be enjoined from attempting to execute Plaintiffs:

        1.    Under the current Execution Protocol;

        2.    Without providing timely and meaningful notice to Plaintiffs of how they will be executed, including identification of the drugs to be used, the source and characteristics of those drugs, and the method of their administration, including the way that venous access will be obtained;

        3.    Without having access to information regarding the execution process, without having access to counsel at every stage of the proceedings, and without having access to the courts

    B.    A declaration that Defendants' actions violate Plaintiffs' First, Sixth, Eighth and Fourteenth Amendment rights; and

    C.    Any other such relief as this Court deems just and proper.

Plaintiffs also request that this Court grant reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and the laws of the United States, as well as for costs of suit.

Dated this 11th day of September, 2015.

Respectfully Submitted,


 */s/ Bobbie Stratton*
**Bobbie Stratton**
Texas Bar No. 24051394
Federal ID No. 1037350
**Bradley E. Chambers**
Texas Bar No. 24001860
Federal ID No. 22008
**Jessica Hinkie**
Texas Bar No. 24074415
Fed. Id. 1366991

**BAKER DONELSON
BEARMAN CALDWELL & BERKOWITZ,
PC**
1301 McKinney, Suite 3700
Houston, Texas 77010
(713) 650-9700 – Telephone
(713) 650-9701 – Facsimile

bchambers@bakerdonelson.com
bstratton@bakerdonelson.com
jhinkie@bakerdonelson.com


Maurie Levin
Texas Bar No. 00789452
211 South Street #346
Philadelphia PA  19147
(512) 294-1540 – Telephone
(215) 733-9225 – Facsimile
maurielevin@gmail.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of September, 2015, the foregoing pleading was filed using the electronic case filing system of this Court.  Thus, counsel of record for Defendants, who have consented to accept this Notice as service by electronic means, was served via the electronic filing system.


*/s/ Bobbie Stratton*