IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

THOMAS WHITAKER, et. al.,  §
        *Plaintiffs*,  §
        §
v.  §        ACTION NO. H-13-2901
        §
BRAD LIVINGSTON, et. al.,  §
        *Defendants*.  §

## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Plaintiffs have filed their second amended complaint in this civil-rights action.  Pls. Second Amend. Compl., ECF No. 109.  Defendants (TDCJ) respectfully move to dismiss the second amended complaint for failing to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6) (2015).

## ARGUMENT

To survive a motion to dismiss for failure to state a claim, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While a complaint need not contain "'detailed factual allegations,'" it must provide more than "'naked assertion[s]' devoid of

1

'further factual enhancement.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## I.   Count One Should Be Dismissed Because It Is Untimely and Does Not State a Claim for Relief.

Plaintiffs allege in Count One that Texas law allowing the Director of the Correctional Institutions Division of TDCJ to change the execution protocol without notice deprives Plaintiffs of (1) their right to be free from cruel and unusual punishment, (2) due process, and (3) access to courts. Pls. Second Amend. Compl. 8–9.

### A.   Count One is time-barred.

"A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003). Method-

of-execution claims in a civil-rights action are subject to a state's personal-injury statute of limitations. *Walker v. Epps*, 550 F.3d 407, 412–14 (5th Cir. 2008). Texas's personal-injury-limitations period is two years. Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (West 2015). A method-of-execution claim accrues on the later of two dates: when direct review is complete or when the challenged protocol was adopted. *Walker*, 550 F.3d at 414–15.

The law that places execution-policy authority with the Director, Article 43.14(a) of the Texas Code of Criminal Procedure, was in effect, as Plaintiffs concede, as early as "2004–2005." *Id*. at 4.[1] Thus, unless Plaintiffs' direct appeals concluded within two years of the filing of their original petition (which TDCJ assumes, for the sake of argument, is the appropriate termination date), Claim One is time-barred.

Plaintiff Whitaker's direct appeal was decided by the Court of Criminal Appeals (CCA) on June 24, 2009. *Whitaker v. State*, 286 S.W.3d 355 (Tex. Crim. App. 2009). And Plaintiff Williams's direct appeal was decided by the CCA on June 11, 2008. *Williams v. State*, 273 S.W.3d 200

---

[1] Texas law has placed authority in the Director to oversee the policy and execution of lethal injections since at least September 1, 1991. Act of June 16, 1991, 72nd Leg., R.S., ch. 652, § 11, 1991 Tex. Sess. Law Serv. Ch. 652.

(Tex. Crim. App. 2008).  Even assuming finality ninety days later—the conclusion of time for seeking a writ of certiorari—Plaintiffs ability to seek timely relief on Claim One terminated well before the original complaint was filed on October 1, 2013.  Pls. Compl., ECF No. 1.  Claim One must be dismissed as time-barred.

### B.    Count One fails as a matter of law.

#### 1.    Cruel and unusual punishment

To make out a method-of-execution claim, an inmate must prove that a State's execution method is at least very likely to inflict serious harm and the inmate must propose an available alternative that substantially reduces the risk of injury.  *See Glossip v. Gross*, 135 S. Ct. 2726, 2737 (2015).  Plaintiffs do not even attempt this showing.  Instead, they rely on an unspecified, future change to TDCJ's execution protocol, which is entirely conjecture, and so is the allegation that any such change will cause them harm (a future change could actually benefit Plaintiffs), or that they will not receive sufficient notice of the change.  To survive a motion to dismiss, Plaintiffs "allegations must be enough to raise a right to relief above the *speculative* level."  *Twombly*, 550 U.S. at 555 (emphasis added).  The allegations in Count One pile speculation on top of speculation and, so far as it relies on the Eighth Amendment, the count

4

should be dismissed. *See Williams v. Hobbs*, 658 F.3d 842, 849 (8th Cir. 2011) (finding speculative that state correctional officer would eliminate anesthesia from execution protocol in the future).

Further, Plaintiffs have provided this Court with no authority that the Eighth Amendment provides a right to know all the details of an execution protocol. The law is to the contrary. *See Powell v. Thomas*, 641 F.3d 1255, 1258 (11th Cir. 2011) ("We decline to read these cases as establishing a categorical rule entitling defendants to a lethal injection protocol that is legislatively enacted and subjected to extensive litigation."). Consequently, Count One, as it relies on the Eighth Amendment, fails as a matter of law and should be dismissed.

### 2.   Due process

As discussed immediately above, Plaintiffs' allegation that there will be a change to TDCJ's execution protocol that will more than likely inflict severe pain for which Plaintiffs will receive insufficient notice is speculative, and it should be dismissed on that basis. *See Twombly*, 550 U.S. at 555; *Williams*, 658 F.3d at 849.

Moreover, Plaintiffs offer no argument in support of their supposed due-process right to notice of execution-protocol changes. It is clear that

there is none—an inmate's "assertion of necessity—that [a state] must disclose its protocol so he can challenge its conformity with the Eighth Amendment—does not substitute for the identification of a cognizable liberty interest. . . . There is no violation of the Due Process Clause from the uncertainty that [the state] has imposed on [the inmate] by withholding the details of its execution protocol." *Sepulvado v. Jindal*, 729 F.3d 413, 419 (5th Cir. 2013); *see also Zink v. Lombardi*, 783 F.3d 1089, 1109 (8th Cir. 2015) (en banc) ("We agree with the Eleventh and Fifth Circuits that the Constitution does not require such disclosure [of execution-protocol details]."); *Wellons v. Comm'r Ga. Dep't Corr.*, 754 F.3d 1260, 1267 (11th Cir. 2014) ("Neither the Fifth, Fourteenth, or First Amendments afford Wellons the broad right 'to know where, how, and by whom the lethal injections drugs will be manufactured, as well as 'the qualifications of the person or persons who will manufacture the drugs, and who will place the catheters.'"); *Beaty v. Brewer*, 649 F.3d 1071, 1072 (9th Cir. 2011) (affirming district court's denial of a "procedural due process" notice claim). Thus, the due-process component of Count One fails as a matter of law and should be dismissed.

### 3.   Access to courts

Again, like the discussions above, Plaintiffs' assertion of a change to TDCJ's execution protocol that is significantly likely to cause severe pain is speculative, and so is the allegation that such change will occur without sufficient time to litigate it.  As such, dismissal is proper.  *See Twombly*, 550 U.S. at 555; *Williams*, 658 F.3d at 849.

Additionally, while a state inmate has a "right of access to the courts," that right does not encompass the ability "to *discover* grievances, and to *litigate effectively* once in court." *Lewis v. Casey*, 518 U.S. 343, 350, 354 (1996) (emphasis removed from initial quotation).  "One is not entitled to access to the courts merely to argue that there might be some remote possibility of some constitutional violation." *Whitaker v. Livingston*, 732 F.3d 465, 467 (5th Cir. 2013).  And the inability to discover execution-protocol information is, as a matter of law, insufficient to state an access-to-courts claim.  *See Zink*, 783 F.3d at 1108; *Wellons*, 754 F.3d at 1267 (denying an access-to-courts claim based on a lack of execution-protocol information); *Williams*, 658 F.3d at 851–52 ("The prisoners do not assert that they are physically unable to file an Eighth Amendment claim, only that they are unable to obtain the information

needed to discover a potential Eighth Amendment violation."). Because the access-to-courts portion of Count One fails as a matter of law, it should be dismissed.

## II. Count Two Should Be Dismissed Because It Is Untimely and Does Not State a Claim for Relief.

In Count Two, Plaintiffs allege that a lack of access to counsel deprives Plaintiffs of their (1) right to counsel and (2) access to courts. Pls. Second Amend. Compl. 10–11.

### A. Count Two is time-barred.

TDCJ requests that the Court take judicial notice of TDCJ's May 2008 execution protocol filed in another method-of-execution case. *Raby v. Johnson, et. al*, No. H-05-765, 2008 WL 4763677 (S.D. Tex. Oct. 27, 2008), ECF No. 51-4.[2]  TDCJ also requests judicial notice of TDCJ's July 2012 protocol filed in this case, Defs. Advisory, Ex. A, ECF No. 9-1,[3] as referenced by Plaintiffs. Second Amend. Compl. 13.  In the context of a motion to dismiss, it is proper to take "notice of publicly-available

---

[2]    For ease of use, Defendants have attached the May 2008 protocol filed in *Raby* as Exhibit A.

[3]    Again, for ease of use, Defendants have attached the July 2012 protocol filed in this case as Exhibit B.

documents . . . [that are] directly relevant to the issue at hand." *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

Comparison of the May 2008 and July 2012 protocols demonstrates that there have been no changes to the access-to-counsel provisions. Policies concerning visitation with attorneys on the day of execution (1) before transfer to the Huntsville Unit (III.B.4) and (2) after transfer to the Huntsville Unit (III.B.12) are identical between the May 2008 and July 2012 protocols. *Compare* Ex. A, *with* Ex. B. Because there has been no access-to-counsel changes since May 2008, there is no new accrual date based on TDCJ's reiteration of these policies in July 2012. *See Gissendaner v. Comm'r, Ga. Dept. Corr.*, 779 F.3d 1275, 1281 (11th Cir. 2015) ("Of course, a claim that accrues by virtue of a substantial change in a state's execution protocol is limited to the particular part of the protocol that changed."). Thus, the termination of direct appeal, as discussed above is the accrual date, and Count Two is time-barred. *Id.* (finding challenges to an IV protocol and the qualifications of those setting an IV to be time-barred because there were no changes to state's protocol within two years of the suit). Count Two should therefore be dismissed.

### B.    Count Two fails as a matter of law.

#### 1.    Right to counsel

Like all of Plaintiffs' prior allegations, this one is also based on speculation.  Plaintiffs speculate that they will have attorneys at the time of their executions, if they ever occur, and they speculate that they will be denied access to their attorneys on the days of their respective executions.  Again, such speculation is insufficient to survive a motion to dismiss.  *See Twombly*, 550 U.S. at 555; *Williams*, 658 F.3d at 849.

Further, the claim fails as a legal matter.  An inmate must demonstrate a constitutional right to counsel to complain of counsel's absence.  *See Wainwright v. Torna*, 455 U.S. 586, 587–88 (1982) ("Since [he] had no constitutional right to counsel, he could not be deprived of the effective assistance of counsel.").  Beyond direct appeal, death-sentenced inmates have no constitutional right to counsel.  *See Murray v. Giarratano*, 492 U.S. 1, 8–10 (1989) (rejecting claim that "a death sentence [cannot] be carried out while a prisoner is unrepresented").  Thus, as a matter of law, Plaintiffs cannot make out a claim for relief.

As to a statutory basis for the count, Plaintiffs again fail to show a right to counsel.  Generally, 18 U.S.C. 3599 (2015) provides for the appointment of counsel to indigent, death-sentenced inmates.  *See*

*Harbison v. Bell*, 556 U.S. 180, 183–86 (2009).   This includes state inmates under a sentence of death seeking federal habeas relief. § 3599(a)(2).   If appointed, such counsel is to represent the state-sentenced inmate in "all post-conviction process," including "stays of execution," "competency proceedings and proceedings for executive or other clemency."  § 3599(e).

But § 3599 says absolutely nothing about a right to be present at the moment of execution.  Instead, § 3599 "provides a federal court with no jurisdiction to issue any order beyond the authorization of funds." *Baze v. Parker*, 632 F.3d 338, 345 (6th Cir. 2011).  Thus, while a federal court may provide attorney funding for an indigent state inmate, it does not mandate access to the inmate on the day of execution.  As a matter of law, Plaintiffs cannot show deprivation of the right to counsel based on a statute that does not guarantee the right they seek to enforce.

Additionally, this Court may take judicial notice that in this action Plaintiffs are represented by counsel not appointed under § 3599.  As such, it is entirely speculative that they would rely on court-appointed counsel at the time of their executions, if any.  This conjecture provides

yet another reason to dismiss this count.  *See Twombly*, 550 U.S. at 555;

*Williams*, 658 F.3d at 849.

### 2.    Access to courts

Once   more,   Plaintiffs'   allegations   are   nothing   more   than

speculation—a belief that counsel will not be permitted to consult with

Plaintiffs if they should ever be executed.  Moreover, Plaintiffs assume

that there would be a reason hypothetical counsel would need to seek

access to the courts on Plaintiffs' behalf.  In other words, Plaintiffs

speculate that there would be an injury inflicted during the execution

process that would require judicial intervention.  This is speculation on

top of speculation, and it is insufficient to survive a motion to dismiss.

*See Twombly*, 550 U.S. at 555; *Williams*, 658 F.3d at 849.

Moreover, Plaintiffs' access-to-courts component in Count Two is in

no different posture than the one in Count One.  Namely, Plaintiffs want

the ability to *discover* potential constitutional violations so that they can

file suit but, as explained above, that is not the right conferred by the

Fourteenth Amendment.  *See Lewis*, 518 U.S. at 354; *Zink*, 783 F.3d at

1108; *Wellons*, 754 F.3d at 1267; *Williams*, 658 F.3d at 851–52.  And the

Supreme Court has rejected the argument that access to courts requires

appointment of counsel.  *See Giarratano*, 492 U.S. at 11–12 ("[I]t would be a strange jurisprudence that permitted the extension of [an access to courts] holding to partially overrule a subsequently decided case such as *Finley* which held that prisoners seeking judicial relief from their sentence in state proceedings were not entitled to counsel.").  As a matter of law, Plaintiffs' access-to-courts argument predicated on access to counsel fails and should be dismissed.

## III.   Count Three Should Be Partially Dismissed Because It Is Untimely and Entirely Dismissed Because It Does Not State a Claim for Relief.

In Count Three, Plaintiffs allege that they are subject to cruel and unusual punishment because TDCJ (1) does not conduct stability testing on its compounded pentobarbital, (2) uses compounded pentobarbital beyond its appropriate "use by" date, and (3) has several insufficient execution-protocol sections.  Pls. Second Amend. Compl. at 11–15.  As a method-of-execution alternative, Plaintiffs allege that TDCJ could administer "a single dose of an FDA approved barbiturate, applied with appropriate safeguards and transparency."  *Id*. at 15.

To make out an Eighth Amendment method-of-execution claim, an inmate must establish that the chosen method creates "a risk that is '*sure*

*or very likely* to cause serious illness and needless suffering,' and give rise to 'sufficiently *imminent* dangers.'" *Glossip*, 135 S. Ct. at 2737 (emphasis in original) (quoting *Baze v. Rees*, 553 U.S. 35, 50 (2008)). This requires showing "'a substantial risk of serious harm,' an 'objectively intolerable risk of harm' that prevents prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.'" *Id*. (quoting *Baze*, 553 U.S. at 50). An inmate must also provide a "'feasible, readily implemented'" execution-method alternative that is not "'slightly or marginally safer,'" but "significantly reduce[s] a substantial risk of severe pain.'" *Id*. (quoting *Baze*, 553 U.S. at 51–52).

Applying the minimal pleading requirements to method-of-execution claims

> requires . . . prisoners to plead more than just a hypothetical possibility that an execution *could* go wrong, resulting in severe pain to the prisoner. The Eighth Amendment prohibits an "'objectively intolerable risk'" of pain, rather than "simply the possibility of pain." . . . "Some risk of pain is inherent in any method of execution—no matter how humane—if only from the prospect of error in following the required procedure." But "the Constitution does not demand the avoidance of all risk of pain in carrying out executions.' Instead, the Eighth Amendment requires that the prisoners show the intended protocol is "'*sure or very likely* to cause serious illness and needless suffering.'"

*Zink*, 783 F.3d at 1098–99 (internal citations omitted) (quoting *Baze*, 553 U.S. at 47, 50, 52, 61–62).

## A.    Compounded pentobarbital challenge

Plaintiffs do not allege that pentobarbital, if pure, potent, and sterile, will not, if used in an execution, result in a humane death. Rather, Plaintiffs' complaints concern the compounding process and are therefore functionally identical to those made by the plaintiffs in *Zink*—sub- or super-potency, contamination, particulates, and improper pH of the lethal injection, all exacerbated by possible improper storage and use beyond the beyond-use date.[4]   *See Zink*, 783 F.3d at 1099–1100. However, these allegations were insufficient to survive dismissal because they were "limited to descriptions of hypothetical situations in which a

---

[4]    Plaintiffs have focused their complaints to supposedly insufficient testing of the compounded pentobarbital and allegedly improper "use-by" dates of the preparations, but underlying these specifics are the still speculative assertions that errors in the compounding process or storage of the preparations *could* lead to *potential* harm, which is the same conjecture insufficient to survive a motion to dismiss in *Zink*. 783 F.3d at 1099–1100. And, for purposes of the Eighth Amendment, the question is not whether there may be "slightly or marginally" better processes, but whether prison officials are deliberately indifferent to a substantial risk of serious harm. *Baze*, 553 U.S. at 50–51. Plaintiffs have made no allegations that reliance on independent testing of a compounded drug for identity, potency, and sterility, and a pharmacist's assignment of a beyond-use date "prevents [TDCJ] from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.'" *Id.* at 50. Because Plaintiffs have failed to rise above speculation of harm, or that TDCJ cannot rely on the expertise of others, their attempts to impose "best practices" on TDCJ fail as a matter of law.

potential flaw in the production of the pentobarbital or in the lethal-injection protocol could cause pain.  This speculation is insufficient to state an Eighth Amendment claim." *Id.* at 1100; *see also Wellons*, 754 F.3d at 1265 ("Wellons's argument that the compounded pentobarbital may be defective or the personnel administering the execution may be untrained is insufficient to establish a substantial likelihood of success on the merits of his Eighth Amendment claim."); *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) ("The Supreme Court has rejected the notion that the absence of approval by the Administration is sufficient to establish a substantial risk of severe pain.").

Moreover, even if such harms were to occur, nothing suggests "it would be more than an isolated incident" but "[t]he prospect of an isolated incident does not satisfy the requirement that prisoners adequately plead a substantial risk of severe pain to survive a motion to dismiss their Eighth Amendment claim." *Id.*  Thus, even accepting Plaintiffs' allegations of potential pain as true, "it would amount to an 'isolated mishap' that, 'while regrettable,' would not result in an Eighth Amendment violation." *Id.* (quoting *Baze*, 553 U.S. at 50).  Thus,

Plaintiffs have failed to plead a claim sufficient to survive a motion to dismiss.

In addition, "[t]he existence of . . . an alternative method of execution . . . is a necessary element of an Eighth Amendment claim, and this element—like any element of a claim—must be pleaded adequately." *Zink*, 783 F.3d at 1103.  Plaintiffs suggest that TDCJ should use a single dose of a FDA approved barbiturate as an alternative to compounded pentobarbital.  The pleading is deficient in that it fails to even *name* the specific drug, the characteristics of the particular drug—injectable vs. oral or short-acting vs. long-acting—or that any such drug has ever been used previously in an execution setting, all bearing on feasibility.  *See Baze*, 553 U.S. at 54 ("[W]e reject the argument that the Eighth Amendment requires Kentucky to adopt the *untested* alternative procedures petitioners have identified. (emphasis added)).

More importantly, Plaintiffs do not even hint that a "FDA approved" barbiturate could be "readily implemented," let alone explain what "FDA approved" means.[5]  And it utterly blinks reality to believe

---

[5]    Does "FDA approved" mean the drug is approved by the FDA for use in executions?  Does "FDA approved" mean that the drug must go through FDA testing?  Does "FDA approved" mean that the manufacturing facility is subject to FDA

that there is a "FDA approved" barbiturate available to correctional facilities for use in executions. The Supreme Court has recognized the unavailability of manufactured barbiturates (sodium thiopental and pentobarbital), *see Glossip*, 135 S. Ct. 2733, and so have Plaintiffs, *see* Amend. Compl. 6 ("Nembutal is no longer available for use in executions."). Plaintiffs' alternative method of execution is conclusory, and is implausible on its face. *See Zink*, 783 F.3d at 1104 (failure to plead that "other methods of lethal injection . . . are feasible and readily implemented, or that they would significantly reduce a substantial risk of severe pain allegedly caused by the present method" was subject to dismissal on the pleadings); *Mann*, 713 F.3d at 1315 ("Although Mann mentioned an alternative procedure in a memorandum filed in the district court, he 'failed to show that any such alternative procedure or drug is 'feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain.'"). Thus, Count Three should be dismissed as failing to state a claim upon which relief may be granted.[6]

---

inspections? Does "FDA approved" mean approved for human use? At bottom, "FDA approved," because Plaintiffs have not explained that term, means nothing.

[6]     Texas is statutorily required to use a lethal-injection process for executions. Tex. Code Crim. Proc. art. 43.14 (West 2015). Plaintiffs' lack of pleading on a readily-implementable alternative, and challenging the only available lethal-injection drug, is tantamount to claiming that lethal injection is categorically impermissible and,

**B.**   **Training,  qualification,  access,  and  procedure challenges**

    **1.**   **The training, qualification, access, and procedure challenges are time-barred.**

As mentioned above, TDCJ requests judicial notice of its May 2008 and July 2012 protocols.  Like in the prior count, comparison of these protocols reveals no changes in the sections (or lack of sections) Plaintiffs now challenge, so there is no new accrual date, and the attack on TDCJ's July 2012 protocol regarding training, qualifications, access, and procedure is time-barred

The sections describing the (1) medical training of members of the drug team (IV.A–C, VII.C[7]); (2) qualifications of those inventorying lethal-injection supplies and drugs (V.B); (3) procedures for carrying out the equipment checks (V.B); (4) qualifications of those preparing the

---

thus, sounds in habeas.  *See Hill v. McDonough*, 547 U.S. 573, 579 (2006); *Nelson v. Campbell*, 541 U.S. 637, 644 (2004).  However, Plaintiffs' categorical-habeas claim is second or successive and this Court, therefore, lacks jurisdiction over it.  28 U.S.C. § 2244(b) (2015).  And any such claim is also barred by the applicable, one-year statute of limitations.  § 2244(d)(1).

[7]    There is a slight change in Section VII.C—the Director is referred to as the "CI Division Director" in the May 2008 protocol and the "CID Director" in the July 2012 protocol.  In short, TDCJ abbreviated the word "Division" in the latter protocol. *Compare* Ex. A, *with* Ex. B.

lethal-injection syringes (VI[8]); (5) qualifications of those monitoring IV lines (VII.C[9]); (6) access-to counsel provisions or lack thereof (III.B.4, 12); (7) procedures for administering a back-up dose (VII.J[10]); (8) policy for designation of death (VII.M (2008); VII.K (2012)[11]); and (9) a lack of "measures for how to proceed if an execution goes awry" are substantially the same, if not identical, in the May 2008 and July 2012 protocols.  As such, the challenged policies' re-adoption in July 2012 does not constitute a new accrual date.  *See Gissendaner*, 779 F.3d at 1281.  Accordingly, because there were no substantial changes to TDCJ's execution protocol within two years of Plaintiffs commencement of suit, and Plaintiffs' direct appeals terminated before that period, the challenges are time-barred.

---

[8]      There is a change in Section VI—the number of saline syringes to be prepared and the drugs to be used for the lethal injection.  There is no change, however, in the qualifications of those preparing those syringes.  *Compare* Ex. A, *with* Ex. B.

[9]      As noted earlier, there is a slight change in the reference to the Director in Section VII.C.  *See supra* Note 8.

[10]      There is a slight change in Section VII.J—because the May 2008 protocol used three drugs, the Director made a consciousness check after administration of the first drug, sodium pentothal, before the next two drugs were be administered.  With the elimination of the last two drugs in the July 2012 protocol, the check—now for "visible signs of life" instead of "visible signs of being awake"—occurs after the only step, instead of the first step, in the process.  *Compare* Ex. A, *with* Ex. B.  The Director is also referenced slightly differently in the latter protocol.  *See supra* Note 8.

[11]      Because there are less steps in the current protocol due to use of a single drug, the provision for pronouncing death is in a different section in the July 2012 protocol.  Both protocols assign the determination of death to a physician.  *Compare* Ex. A, *with* Ex. B.

*Id.*   Therefore, Count Three, to the extent it challenges unchanged provisions of TDCJ's execution protocol, should be dismissed.

### 2. The training, qualification, access, and procedure challenges fail as a matter of law.

Plaintiffs' complaints about training, qualification, access, and procedure should be dismissed because Plaintiffs have failed to allege that any of these purported faults are "'*sure or very likely* to cause serious illness and needless suffering,' and give rise to 'sufficiently *imminent* dangers.'" *Glossip*, 135 S. Ct. at 2737.  For example, how does the lack of counsel access during the IV-insertion phase *cause* pain?  Or, how does an alleged lack of specificity regarding when a backup injection should be administered—which will provide a doubly lethal dose—*inflict* pain?  Rather, Plaintiffs simply list a litany of complaints without taking the next, required step—alleging that the professed shortcomings more than likely give rise to pain.  Plaintiffs' list is, instead, an attempt to suggest "'best practices' for executions" without actually identifying a serious harm. *Baze*, 553 U.S. at 51.  This is insufficient for purposes of the Eighth Amendment and dismissal should result.

Further, to the extent that Plaintiffs' protocol complaints tie into the use of compounded pentobarbital, they fail to show an almost

certainty of severe pain as explained above.  And Plaintiffs fail to even allege method-of-execution alternatives for the so-called lack of procedural safeguards.  For example, they do not allege the sufficient medical training necessary to have "currency in the practice of setting IV's [sic]" or "the scientific background, expertise or training necessary to ensure the purchase of quality drugs."  Without even so much as an allegation a "'feasible, readily implemented'" execution-method alternative, Plaintiffs cannot withstand a motion to dismiss. *Glossip*, 135 S. Ct. at 2737.

Finally, as discussed above, TDCJ's protocol from May 2008 to July 2012 is practically unchanged with the exception of the substances used in the lethal injection.  *Compare* Ex. A, *with* Ex. B.  The May 2008 protocol has already been judicially found to be "substantially similar to the Kentucky protocol that the Supreme Court approved in *Baze*." *Raby v. Livingston*, 600 F.3d 552, 556 (5th Cir. 2010).  In that context, the Fifth Circuit has rejected potential "problems with the insertion of the IV, inadequate monitoring of the IV lines during execution, failure to properly observe the appearance of the inmate after the . . . injection(s), and failure by the Warden to annually review the training and licensure

of the drug team members or to even know the specific qualifications that drug team members must possess." *Id.* at 558. That is because "[a] [s]tate with a lethal injection protocol substantially similar to the protocol [in *Baze*] would not create a [demonstrated] risk [of severe pain]." *Baze*, 553 U.S. at 61. Because TDCJ's present protocol is substantially similar to the one upheld in *Baze*, so far as complaints about training, qualification, access, and procedure are concerned, Count Three fails as a matter of law and should be dismissed.

## IV. Count Four Should Be Dismissed For Failure to State a Claim.

In Count Four, Plaintiffs allege that TDCJ's failure to disclose execution-protocol details violates (1) their right to be free from cruel and unusual punishment, (2) due process, and (3) access to courts. Pls. Second Amend. Compl. 15–18.

### A. Cruel and unusual punishment

Count Four is functionally identical to Count One for purposes of the Eighth Amendment. So far as that amendment is concerned, Plaintiffs fail to plead beyond a speculative level that serious harm is very likely to result from the use of compounded pentobarbital or that there is a feasible and readily available alternative to its use. *See*

*Twombly*, 550 U.S. at 555; *Williams*, 658 F.3d at 849.  And they also fail to establish that the Eighth Amendment demands release of execution-protocol details beyond what is already known to Plaintiffs.  *See Powell*, 641 F.3d at 1258.  Thus, to the extent that Plaintiffs rely on the Eighth Amendment for this count, it should be dismissed.

### B.    Due process

Again, for purposes of due process, Count Four is interchangeable with Count One.  There is no broad due-process right to obtain every detail about a state's execution process.  *See Zink*, 783 F.3d at 1109; *Wellons*, 754 F.3d at 1267; *Sepulvado*, 729 F.3d at 419.  Accordingly, as far as due process is concerned, Plaintiffs claim fails as a matter of law and should be dismissed.

### C.    Access to courts

Finally, Count Four is practically the same as Count One to the extent it implicates access to courts.  An inmate does not possess a constitutional right to obtain execution-protocol details to fulfill his ability to access the courts.  *See Zink*, 783 F.3d at 1108; *Wellons*, 754 F.3d at 1267; *Whitaker*, 732 F.3d at 467; *Williams*, 658 F.3d at 851–52.  As a matter of law, Plaintiffs' access-to-courts argument in Count Four fails and should be dismissed.

## CONCLUSION

Plaintiffs' counts are, in part, time-barred, speculative, and fail as a matter of law.  Defendants respectfully request that Plaintiffs' second amended complaint be dismissed for failing to state a claim upon which relief can be granted.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

ADRIENNE MCFARLAND
Deputy Attorney General
For Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

 s/ Matthew Ottoway
MATTHEW OTTOWAY
Assistant Attorney General
State Bar No. 24047707
Southern District Admission No. 892308

Post Office Box 12548, Capitol Station
Austin, Texas 78711
Tel.: (512) 936-1400
Fax: (512) 320-8132
Email: *matthew.ottoway@texasattorney
general.gov*

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I do herby certify that on September 14, 2015, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court, Southern District of Texas, using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" (NEF) to the following counsel of record, who consented in writing to accept the NEF as service of this document by electronic means:

Bradley E. Chambers
Bobbie Stratton
Jessica Hinkie
Valerie Henderson
BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, P.C..
1301 McKinney, Suite 3700
Houston, Texas 77010

Maurie Levin
ATTORNEY AT LAW
614 South 4th Street #346
Philadelphia, Pennsylvania 19147

 s/ Matthew Ottoway
MATTHEW OTTOWAY
Assistant Attorney General