## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **THOMAS WHITAKER, AND** | § | |
| **PERRY WILLIAMS,** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO: 4:13-CV-2901** |
| | § | |
| **BRAD LIVINGSTON, ET AL.** | § | |
| **Defendants.** | § | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' ADVISORY REFUSING TO COMPLY WITH THIS COURT'S ORDER FOR SUBMISSION OF INFORMATION FOR *IN CAMERA* REVIEW**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

On September 4, 2015, this Court entered an Order (Doc. 103) that stated, in part, "By September 11, 2015, Texas must give the court the master formulation record and the certificate of analysis for *in camera* inspection." On September 11, 2015, Defendants filed an "Advisory Regarding Discovery," (Doc. 107), asserting they could not provide the master formulation record ("MFR") or the certificate of analysis ("COA") to the Court for *in camera* review because those documents are not "in the direct or constructive possession, custody, or control of Defendants." Without explanation, Defendants further asserted: "On information and belief, Defendants reasonably believe that they cannot obtain the (3) master formulation record and (4) certificate of analysis for the on-hand lethal injections. Defendants

also reasonably believe that additional attempts to obtain such documentation will lead to termination of services necessary to carry out lawful sentences." *Id.*

First, Defendants blanket assertions are unsupported in fact and law. Second, the purported need for secrecy precludes the accountability and transparency that Plaintiffs submit is one of the bedrock requirements necessary to protect their constitutional rights. Third, Defendants cannot use blanket and secretive assertions of the need for secrecy to preclude this Court from acquiring the information necessary to adjudicating Plaintiffs' rights, particularly where the disclosure was to be made only to the Court *in camera*.

To begin, Defendants' assertion "on information and belief" that they cannot obtain the ordered information implies they have not attempted even good faith efforts. Their "reasonable belief" that any *attempt* to obtain the information will lead to termination of services implies they have not even asked and the alleged consequence of even an inquiry – "termination of services" – is based on speculation. Plaintiffs are not aware of any law or instance where a parties' refusal to even attempt to provide information ordered by a Court, without any justification or reason beyond conjecture, is countenanced.

Moreover, it is disingenuous to argue that neither the MFR nor the COA is not in the custody, possession, or control of Defendants. Whomever Defendants are paying to compound the lethal injection drugs – a company that has entered

into a contractual relationship with a state agency – is an agent of Defendants.  At a very minimum, they are acting under color of state law, as a private actor may act under color of state law under certain circumstances.  *See Wyatt v. Cole*, 504 U.S. 158, 162 (1992); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982).  For example, a physician who contracts with the state to provide medical care to inmates acts under the color of state law.   *West v. Atkins,* 487 U.S. 42 (1988); *Ort v. Pinchback*, 786 F.2d 1105 (11th Cir. 1986).   For all practical purposes, the "color of state law" requirement is identical to the "state action" prerequisite to constitutional liability.  *Lugar*, 457 U.S. at 929.

As such, the supplier – that is holding the State hostage to their demand for secrecy – is violating Plaintiffs' rights, and is most appropriately joined as a Defendant in this action.  Yet, because their identity is secret, adding the supplier as a defendant is not possible.  If they are not under Defendants' custody or control, yet cannot be joined as Defendants to enable Plaintiffs to protect and vindicate their constitutional rights, Plaintiffs are further denied their rights of due process and access to the courts.

It is "relatively immutable in our jurisprudence . . . that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue."

*Greene v. McElroy*, 360 U.S. 474, 496 (1959*); see also United States v. Nixon*, 418 U.S. 683, 712–13 (1974) ("the allowance of the privilege to withhold evidence that is demonstrably relevant in a criminal trial would cut deeply into the guarantee of due process of law and gravely impair the basic function of the courts.  A President's acknowledged need for confidentiality in the communications of his office is general in nature, whereas the constitutional need for production of relevant evidence in a criminal proceeding is specific and central to the fair adjudication of justice. Without access to specific facts a criminal prosecution may be totally frustrated."); *cf. Smith v. Texas*, 311 U.S. 128, 132 (1940) (a "constitutional right . . . can neither be nullified openly and directly by state legislators or state executive or judicial officers, nor nullified indirectly by them through evasive schemes . . . whether attempted 'ingeniously or ingenuously.'"). Defendants' unsupported assertions themselves abridge and nullify Plaintiffs' constitutional rights, prevent this Court from doing its job, and should not be tolerated.

Defendants' refusal to provide information to this Court for *in camera* review reflects a view that they are not accountable to the courts – nor, effectively, the people of Texas – in the manner in which they carry out executions.  It is a

"just trust us" attitude.[1] The dangers and fallacies of such a path – particularly given the stakes – are evident.

Plaintiffs' distrust in Defendants' assertions are also grounded in recent events, which add fodder to Plaintiffs' claims centered on transparency and exacerbates the existing problems with Defendants' refusal to supply information in response to this Court's Order. According to court records in *Prieto v. Clarke*, Virginia recently turned to Texas because it was unable to obtain drugs to carry out the execution of Alfredo Prieto. *See* No. 1:15-cv-01258 (E.D. Va.). Thus, in August 2015, Virginia prison officials traveled to Texas to obtain three vials of compounded pentobarbital from Defendants. The labels on those three vials reflect a "use by" date of April 14, 2016. *See* Exhibit 1. Moreover, Plaintiffs have learned that Virginia prison officials testified in *Prieto* they were told by Defendants' employees that the vials did not need to be refrigerated, were not

---

[1] Recent events in Oklahoma highlight the inequities in a "just trust us" position. In January 2015, in advance of the execution of Charles Warner, the Oklahoma Attorney General averred that the drugs that would be used were "midazolam, rocuronium bromide, and potassium chloride," and the courts accepted the Attorney General's representations at face value. *See Warner v. Gross*, 776 F.3d 721, 726 (10th Cir. 2015). This month, after an Oklahoma newspaper obtained a copy of the autopsy conducted on Mr. Warner, it was discovered that Oklahoma had not used potassium chloride but "Potassium Acetate"—a different drug, never before used in an execution. *See* Nolan Clay & Rick Green, Wrong drug used for January execution, state records show," THE OKLAHOMAN (Oct. 8, 2015), available at http://goo.gl/B0arfb. Indeed, in September 2015, Oklahoma Governor Fallin halted Richard Glossip's imminent execution because she had been informed the state received potassium acetate (again) instead of potassium chloride. *See* Sean Murphy, Wrong Drug's Use in Execution Prompts Concerns from Governor, ASSOCIATED PRESS (Oct. 8, 2015), available here:
https://www.washingtonpost.com/national/report-oklahoma-used-wrong-drug-in-january-execution/2015/10/08/63327120-6db6-11e5-91eb-27ad15c2b723_story.html

refrigerated during the car ride back from Texas, and should be kept "on the counter."[2]   Lastly, an exhibit (laboratory report regarding the drugs given to Virginia by Texas) submitted by the Virginia Department of Corrections bears the same report date as the Laboratory Sheet provided to Plaintiffs, but reflects a different result on the potency test, and no sterility or endotoxin tests.  *Compare* Exhibit 2 (*Prieto v. Clarke*, No. 1:15-cv-01258 (E.D. Va.), Ex. 1 to Opposition to Motion to Dismiss (Doc 6):  Laboratory Report) and page 1 of Exhibit 3 (*Whitaker v. Livingston*, Exhibit A to Plaintiffs' Motion for Discovery, Doc. 71).  In short, Defendants appear to be – and have been – in possession of additional lethal injection drugs, with a far longer "use by" date than reflected on documents provided to Plaintiffs or this Court.[3]

In addition, on August 20, 2015, Defendants averred to this Court, in conjunction with litigation regarding the validity of use by dates (of five months or less), that all drugs are kept refrigerated at certain temperatures and the lethal injection drugs are transported in a temperature-controlled environment.  *See Whitaker*, Doc. 89 (Defendants' Court-Ordered Disclosure), p. 2.  Clearly, there exists information that was not and has not been provided to Plaintiffs or this Court – information that directly contradicts information already provided that is pivotal

---

[2] No. 1:15-cv-01258 (E.D. Va.).  A transcript of those proceedings has been requested, so the Court may review the precise testimony.

[3] Plaintiffs are submitting a discovery letter to Defendants requesting current and complete information regarding all lethal injection drugs in their possession.

to issues central to this litigation.

Defendants' assertions beg the question:  how much do Defendants actually know about the quality, potency, and stability of the lethal injection drugs they use to carry out executions?  Plaintiffs' expert Dr. Ruble articulates the reasons the MFR and COA are central to an evaluation of the long-term stability of the drugs. Defendants appear to be concealing information about drugs in their possession and are ignoring an order from this Court.

## CONCLUSION

For these reasons, Plaintiffs, Thomas Whitaker and Perry Williams, ask that this Court compel Defendants to produce the Master Formulation Record and Certificate of Analysis and grant all further relief to which Plaintiffs are entitled.

Respectfully submitted,

*/s/ Bobbie L. Stratton*
**Bradley E. Chambers**
Texas Bar No. 24001860
Federal ID No. 22008
**Bobbie Stratton**
Texas Bar No. 24051394
Federal ID No. 1037350
**Jessica Hinkie**
Texas Bar No. 24074415
Fed. ID No. 1366991
**Valerie Henderson**
Texas Bar No. 24078655
Fed. ID No. 1392550
**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, P.C.**
1301 McKinney, Suite 3700
Houston, Texas 77010
(713) 650-9700 - Telephone
(713) 650-9701 - Facsimile
bchambers@bakerdonelson.com
bstratton@bakerdonelson.com
jhinkie@bakerdonelson.com
vhenderson@bakerdonelson.com

Maurie Levin
Texas Bar No. 00789452
211 South Street #346
Philadelphia, PA 19147
(512) 294-1540 - Telephone
(215) 733-9225 - Facsimile
maurielevin@gmail.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 20th day of October, 2015, the foregoing pleading was filed using the electronic case filing system of this Court. Thus, counsel of record for Defendants, who have consented to accept this Notice as service by electronic means, was served via the electronic filing system.

*/s/ Valerie Henderson*
Valerie Henderson