United States District Court
Southern District of Texas
**ENTERED**
June 06, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| Thomas Whitaker, et. al., | § § | |
| Plaintiffs, | § | |
| versus | § § | Civil Action H-13-2901 |
| Brad Livingston, et al., | § § | |
| Defendants. | § § | |

## Opinion on Dismissal

1.  *Introduction.*

    In 2013, Michael Yowell, Thomas Whitaker, and Perry Williams complained that Texas's method of execution violates the Constitution. Each had been convicted of capital murder and sentenced to die in separate, individual cases. On October 9, 2013, the State of Texas killed Yowell by injecting him with five grams of compounded pentobarbital. Texas will execute Williams on July 14, 2016, using the same method. Whitaker's execution has not been scheduled. Texas moves to dismiss the case.

    Williams's and Whitaker's claims will be dismissed because (a) their first, second, and part of their third claims are barred by limitations, (b) they did not adequately plead their complaint, and (c) all four claims are unsubstantiated by reliable, articulable, and demonstrable facts that establish the claims upon which they seek relief.

2.  *Background.*

    A constitutionally acceptable manner of killing people convicted of capital murder necessarily must exist. In 1982, the State of Texas adopted lethal injection as its sole method of execution. A team prepares two syringes with a drug, and then a medically-

trained person injects a lethal dose through intravenous catheters.[1] Texas law does not specify what substance will be used in lethal injections.[2]

The use of pentobarbital in executions is routine. Courts have found that using a drug similar in effect to pentobarbital is constitutional.[3] Since July 9, 2012, Texas has used pentobarbital. It first used compounded pentobarbital in Yowell's execution. Thirty-two inmates in Texas have been killed with compounded pentobarbital without incident.

Texas initially used pentobarbital purchased from manufacturers; when political pressure severely limited the supply of manufactured pentobarbital, it began purchasing it from compounding pharmacies. The plaintiffs claim that the manufactured pentobarbital is created at facilities that comply with rigorous regulations whereas makers of compounded pentobarbital are (a) exempt from those regulations and (b) do not use formulas established by scientific investigations. They say that because some regulations do not apply to compounding pharmacies, the drugs produced in these facilities are less reliable.

Pentobarbital is an intermediate-acting barbiturate. It is used for therapy and in executions. Therapeutic uses include inducing a coma after brain damage and preventing brain damage in some surgeries. Texas is not using it for therapy and does not administer a therapeutic dose. Two gram doses of pentobarbital are fatal, the five gram doses that Texas uses are overwhelmingly so. (94 at 21).

The parties have offered affidavits describing how pentobarbital is made at compounding pharmacies. (64, 67). Compounding pentobarbital involves dissolving an active ingredient – pentobarbital sodium salt powder – in a water-solvent solution. The mixture is processed into a liquid that can be injected. The compounding pharmacy lists the components of compounded pentobarbital for injection as: 50mg/mL of Pentobarbital; "Propylene glycol 40%"; "Alcohol 10%"; "Sterile water for injection"; and "Sodium

---

[1] *Raby v. Livingston*, 600 F.3d 552, 555–56 (5th Cir. 2010).

[2] The executioner will carry out a capital inmate's sentence "by intravenous injection of a substance or substances in a lethal quantity sufficient to cause death and until such convict is dead." TEX. CODE CRIM. PRO. art. 43.14.

[3] *Glossip v. Gross*, 135 S. Ct. 2726, 2733 (2015).

hydroxide and/or hydrochloric acid to adjust pH to approximately 9.5." (89 at 1). Once this process is complete, the solution is tested for sterility, purity, and potency – for reliability.

3.  *Procedural History.*

For many who oppose the death penalty, no method of execution will ever be acceptable. The plaintiffs say that they would challenge every method by which Texas would kill them. (94 at 13-15).

The men sued in 2013, days before Yowell's scheduled execution. When this lawsuit began, the complaint alleged that acquiring compounded pentobarbital from a compounding pharmacy rather than a manufacturer creates a risk of severe pain and infection. It claimed questions existed about contamination, purity, or dilution of the pentobarbital.

The court denied the plaintiffs' request for a preliminary injunction. (21). Texas administered a lethal dose of compounded pentobarbital to Yowell on October 9, 2013. (33). The record establishes no indication that his death was cruel. (33).

The plaintiffs amended their complaint and again argued that using *compounded* pentobarbital is itself unconstitutional. (37). Texas filed a motion to dismiss, and the court granted it. (43). The Appeals Court remanded for more information.

Much activity has followed, and the case is fundamentally different. The court has allowed significant discovery that has narrowed the matters in dispute. After many hearings, the plaintiffs amended their complaint for a second time to state precise claims and to include their expert's opinion. The focus of this case has shifted from a blanket complaint that using all compounded pentobarbital is cruel to a question about the purity, sterility, and potency of each batch bought by Texas. The plaintiffs claim that a lethal dose of an imagined drug approved by the Food and Drug Administration would be permissible to use in their executions.

Texas has furnished information about one batch of compounded pentobarbital. Texas purchased the drug on April 28, 2015. Eagle Analytical Services tested the drug. The drug passed microbiological tests. The chemical tests showed a 99.8% potency. (71, Exhibit

A). The plaintiffs' expert agrees that post-compounding testing verifies the correctness of the drug. (111 at 45). The plaintiffs have made no concrete, particularized, or non-speculative claim that the testing was improperly conducted.

Each compounded drug has a beyond use date (BUD). It approximates when a drug might no longer be reliable. A drug with an expired BUD may still be reliable. The plaintiffs say that Texas's failure (a) to test the reliability of compounded pentobarbital and (b) to verify the BUDs creates an unreasonable risk of cruelty. The essence of plaintiffs' complaint is that Texas will botch their executions by using an unreliable or untested drug.

The plaintiffs claim that no compounded drug should be used after 45 days unless its reliability is examined. They concede that their position relies on experiments examining when unreliable drugs are used in therapeutic doses; "there's a fair amount of speculation as to what would happen" if Texas used a lethal dose after the BUD. (94 at 26). No science has been offered that shows the effect time has on the use of a dose ten times the therapeutic use or over twice the lethal dose. The plaintiffs do not explain the nature or level of pain that Williams or Whitaker would suffer if the lethal dose is administered after its BUD.

The plaintiffs claim that using expired pentobarbital is a "systemic" problem. The plaintiffs have not established that Texas has used expired or unreliable compounded pentobarbital; they have not shown or even claimed unacceptable harm done to the last thirty-two prisoners executed with compounded pentobarbital. (114 at 12).

4. *Amended Complaint.*

The plaintiffs have amended their complaint. It claims:

(1) Texas's unilateral ability to change the execution protocol without notice violates the Eighth and Fourteenth Amendments' prohibition on cruel and unusual punishment, their right to notice, and the opportunity to be heard.

(2) Texas denies attorneys access to the inmate immediately before, and during, the execution in violation of the First, Sixth, and Eighth Amendments.

(3) Their execution will be cruel and unusual under the Eighth Amendment because Texas does not sufficiently test the compounded pentobarbital, it uses old drugs, and the protocol does not contain adequate safeguards.

(4) Failure to disclose information about compounded pentobarbital and concealment of information about the execution procedure violates the plaintiffs' rights to be free from cruel punishment and to be heard.

5. *Texas's Stipulation.*

The plaintiffs initially complained that Texas had other drugs in its possession that it could use to kill Williams and Whitaker: propofol, midazolam, and hydromorphone. They say that under Texas's protocol it could decide to use one of those drugs at any moment before their executions. They also complained that Texas does not re-test the compounded pentobarbital for efficacy and reliability before it is used.

Texas stipulates that it will not change its means, method, and procedure before it kills Williams and Whitaker. Texas will use compounded pentobarbital, test the drug for reliability shortly before the executions, and will follow its current established execution procedure when it kills them. Importantly, this stipulation (a) assuages concerns that an unreliable and untested drug will be used to kill Williams and Whitaker, (b) commits Texas to using compounded pentobarbital in their executions, and (c) has given Whitaker

and Williams months to speak to their attorneys about the protocol that will be followed when Texas kills them.

The plaintiffs concede that if Williams and Whitaker are administered compounded pentobarbital that has been re-tested for potency, sterility, and purity shortly before its use, they do not have a constitutional challenge to its use in their executions.

Despite this concession, the court will now address Texas's motion to dismiss.

6.  *Standard of Review.*

Texas moved to dismiss this case after the plaintiffs amended their complaint for the second time. The court accepts all substantiated allegations in the complaint as true and construes them in the light most favorable to the plaintiffs.[4] A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant may be liable for the misconduct alleged."[5] Abstract assertions supported by hypothetical or speculative facts and theories are insufficient.

7.  *Cruel and Unusual Punishment: The Risk and The Alternative.*

Sufficiently to state a claim to challenge Texas's means and method of execution, the plaintiffs must plead (a) the use of compounded pentobarbital has a demonstrated risk of severe pain and (b) a readily implementable and feasible alternative method of execution.[6]

A prisoner must plead more than a hypothetical possibility that an execution could go wrong or that he may suffer pain. The plaintiffs must plead facts showing an objectively intolerable risk of pain because the compounded pentobarbital is "sure or very likely to cause serious illness and needless suffering, and give rise to sufficiently imminent dangers."[7] Their claims must be specific; they cannot merely offer a hypothetical range of errors.

---

[4] *See, e.g., Christopher v. Harbury,* 536 U.S. 403, 406 (2002).

[5] *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

[6] *Glossip,* 135 S. Ct. 2726, 2737 (2015) (quoting *Baze v. Rees,* 553 U.S. 35, 50 (2008)).

[7] *Id.* at 2737 (quoting *Baze,* 553 U.S. at 50).

A. *The Risk.*

The amended complaint relies on a rambling of theories to meet the pleading requirements of *Glossip*. Williams's and Whitaker's burden under the first prong is not light. Courts have repeatedly held that executing inmates with pentobarbital meets constitutional requirements. The plaintiffs speculate that Texas may use compounded pentobarbital after its BUD or that has not been properly stored or both. Their expert says that the use of compounded pentobarbital raises *concerns* about the reliability of the drug which could risk severe pain. He does not say how those concerns give rise to an increase to the risk that the plaintiffs will suffer pain more cruel in character or intensity. The plaintiffs offer no facts that demonstrate that this risk is not more than merely hypothetical nor do they state the intolerable harm Williams and Whitaker would actually suffer from the drug's use.

The plaintiffs agree "in principle" that Texas's stipulation to test the reliability of the drug before execution renders this case moot. (111 at 48). The complaint does not have an identifiable risk or specific harm, much less a demonstrated, substantial one, that will result if the testing shows that the drug is sterile, pure, and potent when administered.

The plaintiffs also speculate that some unknown factor will cause unreasonable harm when the lethal dose of pentobarbital over-sedates the inmate. They do not specify the effect this will have on the nature or level of pain experienced by Williams or Whitaker. They also do not specify the added pain that can be attributed to Texas's use of compounded pentobarbital rather than manufactured pentobarbital to over-sedate the inmate. At best, the plaintiffs plead the possibility of an episodic, isolated pain event, rather than an intolerable, likely risk when administering an excessive dose. Conjecturing on a range of unspecified possible problems with the execution does not amount to an intolerable and concrete risk of possible cruelty or a properly pleaded claim.

B. *The Alternative.*

The plaintiffs cannot satisfy *Glossip*'s second prong. They have not pleaded a known and available alternative method of execution that would entail a significantly less severe risk of unreasonable pain to them. They have not told Texas a known and available drug that they would like for it to use when it kills them; the law requires that prisoners pick their own poison.

They allege that "a single dose of an FDA approved barbiturate" used under "appropriate" safeguards will meet constitutional requirements. (109 at 15). Pentobarbital is a barbiturate. The FDA certifies that drugs sold to the public as therapeutic are helpful and without unreasonable risk; it does not approve drugs to be used in doses that kill people. Moreover, if the court accepted the plaintiffs' concerns that doses that cause oversedation lead to an unreasonable risk of severe pain, then those concerns apply equally to their suggested alternative. The plaintiffs have not identified any FDA-approved barbiturate that when used in a lethal dose "significantly reduces a substantial risk of severe pain."[8]

Because Williams and Whitaker have not met the pleading requirements to challenge Texas's method of execution, the second amended complaint must be dismissed.

Alternatively, the court will address each of the plaintiffs' claims.

8.  *Statute of Limitations.*

Texas says that Williams's and Whitaker's claims relating to the lethal-injection procedure are time barred.[9] Because Section 1983 has no statute of limitation, Texas's two-year statute for personal-injury actions governs a method-of-execution challenge.[10] William's and Whitaker's cause of action accrued when each knew or should have known of the injury.[11]

---

[8] *Glossip*, 135 S.Ct. at 2737

[9] Claims one, two, and the part of three challenging Texas's procedure

[10] *Walker v. Epps*, 550 F.3d 407, 415 (5th Cir.2008); *Burrell v. Newsome*, 883 F.2d 416, 419 (5th Cir.1989).

[11] *Gonzalez v. Wyatt*, 157 F.3d 1016, 1012 (5th Cir. 1998).

Texas adopted its lethal-injection protocol in 2008. The 2008 protocol does not violate an inmate's right to be free of cruel and unusual punishment.[12] Texas revised its execution protocol in 2012, but the "only difference . . . is a change from the use of three drugs to a single drug."[13] The core procedures that Texas will use to kill Williams and Whitaker have been in place since at least 2008.

The plaintiffs have known they would be executed by lethal injection since their convictions became final in 2008 and 2009. They have known how Texas would kill them since Texas adopted the 2008 protocol. Whitaker challenged Texas's execution protocol in his direct appeal to the state that concluded in 2009.[14] Whitaker also raised a lethal-injection challenge in his 2011 federal petition for a writ of habeas corpus.[15]

The plaintiffs filed their complaint on October 1, 2013. Their claims accrued well before October 1, 2011.[16]

Claims one, two, and part of three are barred by limitations. Even if these claims were not precluded, all four claims lack facial plausibility and the facts required to support a reasonable finding that Texas is liable.

9. *Claim One: Ability to Change Execution Method.*

Texas law does not mandate what drug it will use in its lethal-injection protocol. The plaintiffs say that Texas can change the drug and execution protocol without notifying them, thus violating their Eighth and Fourteenth Amendment rights. The plaintiffs specifically allege that it impairs the due-process right to notice, an opportunity to be heard, and access to courts. The plaintiffs agree that this is a legal question. (61 at 13).

---

[12] *Raby v. Livingston*, 600 F.3d 552, 562 (5th Cir. 2010).

[13] *Trottie v. Livingston*, 766 F.3d 450, 453 (5th Cir. 2014).

[14] *Whitaker v. State*, 286 S.W.3d 355, 369 (Tex. Crim. App. 2009).

[15] *Whitaker v. Stephens*, 4:11-cv-2467 (S.D. Tex.), DE 1.

[16] *See Valle v. Singer*, 655 F.3d 1223, 1236 (11th Cir. 2011) (applying an earlier accrual date when the only change in protocol was the switch to a new drug); *Cooey v. Strickland*, 479 F.3d 412, 423 (6th Cir. 2007) (applying an earlier accrual date when changes in protocol do not affect the plaintiff's "core complaint").

A state need not disclose every detail of the execution protocol.[17] Before constitutional process requires notice and an opportunity to be heard, the plaintiffs are obliged to identify a cognizable liberty or property interest implicated by the protocol or a change in it.[18] Simple uncertainty about a method of execution does not give rise to a liberty interest.[19] No cognizable liberty interest lies in the disclosure of protocol merely so an inmate can challenge it.[20]

State prisoners have a constitutional "right of access to the courts,"[21] but this right does not guarantee the ability "to discover grievances, and to litigate effectively once in court."[22] The plaintiffs speculate that Texas will change its execution protocol despite Texas telling the court that it will not. A second layer of speculation leads to their claim that a change in protocol would prevent them from filing a lawsuit. A court cannot entertain, much less adjudicate, claims supported merely by speculation overlaid by speculation.[23]

Claim one does not raise an issue upon which relief can be granted.

10. *Claim Two: Access to Counsel and the Courts.*

Texas's execution protocol says that "[t]he offender may have visits with . . . his attorney(s) on the day of execution at the Huntsville Unit; however, the Huntsville Unit Warden must approve all visits." (104, Exhibit 2 at 7).

---

[17] *Zink v. Lombardi*, 783 F.3d 1089, 1109 (8th Cir. 2015); *Wellons v. Comm'r Ga. Dep't Corr.*, 754 F.3d 1260, 1267 (11th Cir. 2014); *Sepulvado v. Jindal*, 729 F.3d 413, 419 (5th Cir. 2013).

[18] "To establish a procedural due process violation, Plaintiff must show that (1) he had a property or liberty interest that was interfered with by Defendants, and (2) Defendants failed to use constitutionally sufficient procedures in depriving Plaintiff of that right." *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).

[19] *Whitaker v. Livingston*, 732 F.3d 465, 467 (5th Cir. 2013).

[20] *Sells v. Livingston*, 750 F.3d 478, 481 (5th Cir. 2014); *Sepulvado v. Jindal*, 729 F.3d 413, 419 (5th Cir. 2013)

[21] *Lewis v. Casey*, 518 U.S. 343, 350 (1996).

[22] *Id.* at 354; *Zink*, 783 F.3d at 1112; *Wellons*, 754 F.3d at 1267; *Williams v. Hobbs*, 658 F.3d 842, 852 (8th Cir. 2011).

[23] U.S. CONST. art. III, § 2.

The plaintiffs complain that Texas's lethal-injection protocol limits communication with counsel on the day of, and during the process of, the execution. The plaintiffs fear that they will not be able to petition the courts during the I.V. insertion or later. The plaintiffs insist that they have a right to communicate with attorneys once in the execution chamber, so they could commence litigation about aspects of the execution.[24] The plaintiffs do not identify any specific legal claims that will be inhibited by the lack of in-person access to counsel in the hours and minutes prior to a scheduled execution. Except an intervention by the governor or a court in a pending case, the die is cast when the execution begins.

The Constitution guarantees Williams and Whitaker an attorney during all stages of state appeal and federal post-conviction litigation. Long before execution, Texas has already complied with the condemned's Sixth Amendment right to counsel.[25] They have not shown that the Sixth Amendment protects against interruptions of attorney-client communication.

To state a claim for impeding access-to-courts and access-to-counsel, the plaintiffs must plead "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim."[26] The right of access is not "an abstract, freestanding right" but exists to vindicate other rights.[27] They have not pleaded facts to show that in-person communication between an inmate and his attorney on the last day of his life is likely to result in raising a viable legal claim.

Once again, the plaintiffs only speculate that the warden will impair their ability to seek redress in court. The plaintiffs do not plead that any non-frivolous legal claim has been

---

[24] It's ironical that the plaintiffs, who did not personally meet their attorneys until quite late in this legal action (111 at 19-20), worry about having them present in the death chamber.

[25] The Sixth Amendment right to counsel it that "once the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings." *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009). The Sixth Amendment right to counsel does not extend beyond direct appeal. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).

[26] *Lewis v. Casey*, 518 U.S. 343, 354 (1996).

[27] *Id.* at 351

or will be impeded by some hypothetical deprivation of access. Conjecture as to the nature and severity of the unreasonable harm they might suffer from the execution is inadequate.

Claim two does not raise an issue upon which relief can be granted.

11.  *Claim Three: Eighth and Fourteenth Amendment.*

The plaintiffs allege that Texas violates the Eighth and Fourteenth Amendments by (a) failing to conduct sufficient testing of the compounded pentobarbital prior to injection; (b) using a beyond use date for compounded pentobarbital that extends far beyond accepted scientific guidelines; and (c) relying on Texas's current execution protocol. Aside from not pleading sufficient law or facts to survive dismissal generally, each claim does not rise above the speculative, press-release level.

   A.   Testing.

Texas is not using a new drug. The science and results of using pentobarbital is known and has been known for some time. Texas tests its compounded pentobarbital for sterility, purity, and potency. The plaintiffs suggest that errors in testing have or will occur – a suggestion untethered to reality. They offer no data showing (a) errors in testing exist, (b) how the integrity of the test is compromised, or (c) that the drug is likely to be defective if it is mis-tested.

Compounded pentobarbital has successfully killed the condemned in Texas. Texas will test its drugs before executing these men. Plaintiffs speculate that Texas's compounded pentobarbital is unreliable, but agree that post-compounding testing establishes the reliability of the drug. Even if Texas had not agreed to re-test the drug in their executions, their claim is based on the *assumption* that by the time that the compounded pentobarbital is used in executions it has degraded and thus creates a substantial risk of severe pain. Not only do they not offer facts that the drug actually degrades, they have not specified the type or extent of pain caused by using degraded drugs in super-lethal doses. They do not plead any particularized flaw in testing that raises more than a hypothetical risk of harm. This is an imagined claim.

B.  *Beyond Use Date.*

The plaintiffs no longer argue that the use of *any* compounded pentobarbital violates the Eighth Amendment. The question is the effect of the passage of time – combined with the way Texas stores the compounded pentobarbital – on its quality, sterility, and potency.

The plaintiffs complain that Texas will use compounded pentobarbital after its BUD has passed. Texas has not said that it will use the compounded pentobarbital outside the BUD assigned by the testing company.

The plaintiffs say that the testing company assigns a BUD well after when their expert says is acceptable. Calling companies that do business with Texas incompetent or corrupt because of Texas's death penalty may sound good for mudslinging, but it does not establish a rational claim rooted in real facts.

Despite broad opportunities to do so, the plaintiffs have not described why it would matter even if the drugs were used after the assigned BUD. The concern is that if the compounded pentobarbital is old, then it will no longer be reliable. The plaintiffs have no technical data about the effect of that drug a day, a month, a year, or anytime past the beyond use date. Their expert asserted in an earlier pleading that the prisoners might get meningitis because a news clipping said that people did in a batch given to the elderly. They only allege hypothetical risks; they have not described a significant risk of severe pain resulting from pentobarbital itself, the compounding, or the agency.

The plaintiffs made some assertions about the therapeutic use of old pentobarbital but did not plead any facts about the rate of degradation of compounded pentobarbital. The plaintiffs have claimed that compounded pentobarbital has caused meningitis or other infections when used for therapy. Texas administers two and a half times the amount of the drug needed to kill a person. Alleged complications that develop days or years after a therapeutic dose does not establish that Williams or Whitaker will face an intolerable risk of pain during the score of minutes it takes for the lethal dose to kill them.

Williams and Whitaker seem to claim that there is something inherently wrong with using compounded pentobarbital after the BUD. The BUD merely approximates how

long a drug is guaranteed to be reliable; its passage does not necessitate a change in the drug's reliability nor does it establish that the pain plaintiffs will suffer will be more cruel in character or intensity.

Texas will test the drugs before using them on the plaintiffs. Williams and Whitaker will be killed by reliable compounded pentobarbital.

C.   Texas Protocol.

The plaintiffs complain that the training, personnel, access, and procedure are inadequate. To state a claim they must show that these purported faults (a) are likely to be true, (b) are sure or very likely to cause serious illness and needless suffering, and (c) give rise to sufficiently imminent dangers.[28] Inmates have repeatedly challenged Texas's execution protocol. Concerns similar to the ones raised here have "failed to establish that the Texas lethal-injection protocol creates a demonstrated risk of severe pain."[29] Even to the extent that the plaintiffs' concerns focus on different elements of the protocol, they do not plead facts that would entitle them to relief because they have not connected their accusations to real unreasonable harms that Williams and Whitaker would endure. Quite simply, "the proper administration of the Texas procedure comports with the Eighth Amendment."[30] No allegation that rises above the speculative exists that maladministration – however generated – causes unintended suffering from Texas's use of compounded pentobarbital.

Claim three does not raise an issue upon which relief can be granted.

---

[28] *Glossip*, 135 S. Ct. at 2737 (quotation omitted).

[29] *Raby*, 600 F.3d at 560.

[30] *Ladd v. Livingston*, 777 F.3d 286, 290 (5th Cir. 2015); *see also Sells*, 750 F.3d at 480–81; *Trottie*, 766 F.3d at 42-53.

12. *Claim Four: Access to Courts.*

Prisoners have a right to access the courts.[31] The plaintiffs say that Texas's secrecy and tardiness in disclosing the execution drug denies them access to the courts.

The plaintiffs have been able to bring suit and litigate an Eighth Amendment claim. This court has allowed the plaintiffs to legitimize their facially inadequate complaint. Litigation has uncovered some relevant information about the proposed method of execution. The plaintiffs want more discovery. Among other things, they want to know what equipment was used to test the lethal-injection drugs and how and from whom Texas acquired the drugs.

The plaintiffs' access-to-the-courts argument depends on their ability to show a potential Eighth Amendment violation.[32] Texas has told the plaintiffs what they will kill them with and how they will do it. There is no denial of access just because they do not get what they want. When this requested information has been available it has not been used to support legal claims; it was only used as a tool for opponents of the death penalty to attack suppliers.

As the Appeals Court noted when allowing Yowell's execution to proceed: "what plaintiffs are demanding is that, in effect, they be permitted to supervise every step of the execution process. They have no such entitlement. They must offer some proof that the state's own process – that its choice of pharmacy, that its lab results, that the training of its executioners, and so forth – is suspect. Plaintiffs have pointed to only hypothetical possibilities that the process was defective."[33] The plaintiffs have not pleaded adequate facts or law that shows they have been denied any probative information about Texas's execution procedure.

Claim four does not raise an issue upon which relief can be granted.

---

[31] Prisoners have a constitutional right of access to the courts that is "adequate, effective, and meaningful." *Bounds v. Smith*, 430 U.S. 817, 822 (1977). However, this right "guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis*, 518 U.S. at 54.

[32] *Whitaker*, 732 F.3d at 467.

[33] *Whitaker*, 732 F.3d at 468.

13. *Conclusion.*

Williams and Whitaker have not established that the use of compounded pentobarbital poses a severe risk of injury, nor have they named a reasonable, feasible alternative that Texas should use to kill them. The amended complaint does not offer reasonable data that undermines what the facts and law establish: Williams and Whitaker will be killed by a lethal dose of tested compounded pentobarbital used through a constitutional protocol.

"Though the penalty is great and our responsibility heavy, our duty is clear."[34] This case is dismissed.

Signed on June 6, 2016, at Houston, Texas.

Lynn N. Hughes
United States District Judge

---

[34] *Rosenberg v. United States*, 346 U.S. 273, 296 (1953) (Clark, J.).